**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

**BRITTANY BONGIOVANNI,** *et al.,*

     *Plaintiffs,*

  **v.**                  **NO. 3:22-CV-00237-MMH-MCR**

**LLOYD AUSTIN, III,** *et al.*

     *Defendants.*

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND
MEMORANDUM IN SUPPORT THEREOF**

Plaintiffs, U.S. Air Force Captain Erin Davis, Lieutenant Colonel ("LTC") Torrey Hamilton, Technical Sergeant ("TSgt") Joseph Mazure, Colonel John McAfee, and Captain Kyle Singletary (collectively, "Movants"), pursuant to Rule 65(a) of the Federal Rules of Civil Procedure and Local Rule 6.02, file this motion for preliminary injunction, and memorandum in support thereof, and request that this Court grant the injunctive relief requested in the Proposed Order. *See* Ex. 1. Movants further request that this Court establish an expedited briefing schedule in order for the Court to grant the relief requested herein as expeditiously as possible.

## INTRODUCTION

Each Movant serves in the U.S. Air Force and has unsuccessfully requested religious accommodation from the Defendant Department of Defense ("DOD") COVID-19 vaccine mandate ("DOD Mandate") and Defendant

1

Department of the Air Force's ("Air Force") implementation thereof. Each Movant's initial Religious Accommodation Request ("RAR") has been denied, and except for Davis, each Movant's RAR appeal has also been denied, with nearly identical form denial letters. This is not a coincidence, but rather the result of a uniform policy set by Secretary Austin—and upon information and belief, a direct order issued by Defendant Air Force Secretary—that was subsequently executed by the Air Force chain of command.

To date, at least five U.S. District Courts have found that the DOD-wide directive to uniformly deny all religious accommodations likely violates the Religious Freedom Restoration Act ("RFRA") and the First Amendment Free Exercise Clause and enjoined the implementation thereof.[1] These courts granted injunctions based, in part, on data provided by Defendants in a proceeding in this District, *Navy SEAL 1 v. Austin*, No. 8:21-cv-02429-SDM-

---

[1] *See generally Navy SEAL 1 v. Austin,* --- F.Supp.3d ---, 2022 WL 534459 (M.D. Fla. Feb. 18, 2022) ("*Navy SEAL 1* PI Order") (Navy and Marine Corps), *stay denied* --- F.Supp.3d ---, 2022 WL 710321 (M.D. Fla. Mar. 2, 2022) (denying emergency stay) ("*Navy SEAL 1* Stay Order"), *stay denied pending appeal* No. 22-10645 (11th Cir. Mar. 30, 2022); *Navy SEAL 1 v. Austin*,; *U.S. Navy SEALs 1-26 v. Biden*, --- F.Supp.3d. --- , 2022 WL 34443 (N.D. Tex. Jan. 3, 2022) ("*Navy SEALs 1-26* PI Order") (Navy), *stay denied*, --- F.4th ---, 2022 WL 594375 (5th Cir. Feb. 28, 2022) ("*Navy SEALs 1-26* Stay Order"); *Air Force Officer v. Austin*, --- F.Supp.3d ---, 2022 WL 468799 (M.D. Ga. Feb. 15, 2022) ("*Air Force Officer*") (Air Force); *Poffenbarger v. Kendall*, No. 3:22-cv-1, 2022 WL 594810 (S.D. Oh. Feb. 28, 2022) ("*Poffenbarger*") (Air Force); *Doster v. Kendall*, --- F.Supp.3d ---, 2022 WL 982299 (S.D. Ohio Mar. 31, 2022) ("*Doster*") (Air Force). In the *Navy SEALs 1-26* proceeding, the district court has granted a class-wide injunction to all Navy personnel who have submitted an RAR. *See U.S. Navy SEALs 1-26 v. Biden*, --- F.Supp.3d. ---, 2022 WL 1025144 (N.D. Tex. Mar. 28, 2022) ("*Navy SEALs 1-26* Class PI Order")

TGW (M.D. Fla.) ("*Navy SEAL 1* Proceeding"), and similar data provided in other proceedings. This data conclusively establishes that Defendants are systematically violating the rights of military service members to the free exercise of religion. The whole process is little more than "theater," *Navy SEALs 1-26* PI Order, 2022 WL 594375, at *1, with "'rubber stamp' adjudication by form letter[s]" reciting the "magic words" of the statute, "a process incompatible with RFRA's command to assess each request 'to the person.'" *Navy SEAL 1* PI Order, 2022 WL 534459, at *18.

This Court should grant the same relief to Movants, each of whom currently faces irreparable harm in being forced to choose between obeying the "vaccination order and violat[ing] their sincerely-held religious belief[s]," and imminent or "immediate processing for separation or other punishment," *Navy SEAL 1* PI Order, 2022 WL 534459, at *19. For the sake of brevity, Movants incorporate the attached previously filed papers in support of this Motion.[2]

## STATEMENT OF FACTS

As of May 17, 2022, the Air Force has received over twelve thousand requests for religious accommodation. *See* Ex. 9, ECF 25, Table 1. DAF has

---

[2] Pursuant to Local Rule 6.02(a)(2), Movants have attached Plaintiffs' previous pleadings, and incorporate by reference in this Motion all exhibits and evidence referenced in those pleadings: (1) Ex. 9, March 15, 2022 Corrected Complaint, ECF 25; (2) Ex. 10, Plaintiffs' March 8, 2022 Motion for Preliminary Injunction, *et al.* ("PI Motion"), ECF 13; and (3) Ex. 11, Plaintiffs' April 4, 2022 Reply Brief, ECF 33.

approved only 66—all for service members at the end of their careers[3] who were otherwise eligible for an administrative exemption—while denying 6,003 initial requests and 2,643 final appeals (for a total of 8,646 denials).[4] The Air Force currently has granted 825 medical exemptions, and 1,073 administrative exemptions (for a total of 1,898). *Id.* The Air Force has administratively separated 383 active-duty Airmen. *Id.* The vaccination rate for active-duty airmen is 98.4%. *Id.*

On October 19, 2021, Air Force leaders attended the CORONA conference, including all MAJCOM commanders, and those who were responsible for adjudicating RARs. The 2021 CORONA Conference was held at the United States Air Force Academy. Whistleblowers have reported that all Chaplains and all persons other than those MAJCOM commanders responsible

---

[3] *See* Ex. 11, ECF 33 at 5 & n.6; *see also* ECF 33-4, *Poffenbarger v. Austin* Transcript at 59:19-59:25 (Air Force counsel stated that the airmen receiving approval submitted "admin exemptions for terminal leave … as a religious exemption even though they were eligible for terminal leave when it was granted under those same administrative – same sort of factors" required for approval of administrative exemptions."). More recently, in the May 9, 2022 hearing *Roth v. Austin*, No. 8:22-cv-3038-BCB-MDN (D. Neb.), the transcript for which is not currently available, Air Force counsel again admitted that the Air Force has approved RARs only for airmen at the end of their service who would otherwise qualify for administrative exemptions. *See* Kristina Wong, *Air Force Admits All Granted Religious Accommodations for Vax Were for Airmen Already Leaving Service*, BREITBART NEWS (May 10, 2022), available at: https://www.breitbart.com/politics/2022/05/10/exclusive-air-force-admits-all-granted-religious-accommodations-for-vax-were-for-airmen-already-leaving-service/ (last visited May 17, 2022).

[4] *See generally* DAF, DAF COVID-19 Statistics – May 10, 2022, *available at:* https://www.af.mil/News/Article-Display/Article/3018445/daf-covid-19-statistics-may-10-2022/ (last visited May 17, 2022).

for adjudicating accommodation requests to the Air Force's vaccine mandate, were asked to leave the room. Upon information and belief, the Secretary of the Air Force and/or his designees, communicated that no RARs could or should be approved for anyone who would remain in the Air Force. This is consistent with the Air Force's subsequent conduct, and admissions of Air Force counsel in the hearings held in the *Poffenbarger* and *Roth* proceedings.

## **LEGAL STANDARD**

A district court may grant a preliminary injunction where the moving party demonstrates:

> (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.

*Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). In a case involving the First Amendment, however, there is a presumption of irreparable injury, such that satisfaction of the first element is dispositive for other factors. Further, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct 63, 67, 208 L.Ed.2d 206 (2020) ("*Cuomo*"). This applies equally to violations to RFRA because it enforces First Amendment freedoms. *See Navy SEAL 1* PI Order, 2022 WL 534459 at *19 (*citing Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012)).

## ARGUMENT

## I.   THIS COURT HAS SUBJECT MATTER JURISDICTION.

### A.   Movants' Claims Are Justiciable in District Court.[5]

RFRA expressly creates a remedy in district court, granting a "person whose religious exercise has been burdened in violation of" RFRA to "assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against the government." 42 U.S.C. § 2000bb-1(c).

The Fifth Circuit rejected arguments previously made by Defendants in this proceeding that RFRA claims by service members are not justiciable:

> Congress rendered justiciable Plaintiffs' claims under RFRA, which applies to every 'branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States[.]'

*Navy Seals 1-26* Stay Order, 2022 WL 594375, at *7. "RFRA, in turn, sets the standards binding every department of the United States, and "[i]t undoubtedly 'applies in the military context.'" *Id.* (*quoting United States v. Sterling*, 75 M.J. 407, 410 (C.A.A.F. 2016), *cert. denied, Sterling v. United States,* 137 S. Ct. 2212 (2017)).

---

[5] Plaintiffs' PI Motion and Reply Brief addressed at length the issues of justiciability, ripeness, and exhaustion requirements for Plaintiffs' RFRA and First Amendment claims, which are nearly identical to those of Movants here, including satisfaction of the requirements set forth in *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971). *See* Ex. 10, ECF 13 at 6-12 & Ex. 11, ECF at 3-6. Movants incorporate those arguments by reference, and rather than repeating them here, Movants here address issues not previously briefed or that are specific to Movants.

> This makes sense because service members 'experience increased needs for religion as the result of being uprooted from their home environments, transported often thousands of miles to territories entirely strange to them, and confronted there with new stresses that would not otherwise have been encountered if they had remained at home.'

*Id.* (*quoting Katcoff v. Marsh*, 755 F.2d 223, 227 (2nd Cir. 1985)). "Federal courts are therefore empowered to adjudicate RFRA's application to these Plaintiffs." *Id. See also Bostock v. Clayton County*, 140 S. Ct. 1731, 1754 (2020) (Gorsuch, J.) (observing that "RFRA operates as a kind of a super statute, displacing the normal operation of other federal laws").

Even if military operations require some deference from courts, "resolving a claim founded solely upon a constitutional right is singularly suited to a judicial forum and clearly inappropriate to an administrative board." *Adair v. England,* 183 F. Supp. 2d 31, 55 (D.D.C. 2002) (citation omitted). In any case, the logic underlying non justiciability in military cases is "wholly inappropriate ... when a case presents an issue that is amenable to judicial resolution."[6]

---

[6] *Dilley v. Alexander*, 603 F.2d 914, 920 (D.C.Cir.1979); *see also id.* ("It is a basic tenet of our legal system that a government agency is not at liberty to ignore its own laws and that agency action in contravention of applicable statutes and regulations is unlawful.... The military departments enjoy no immunity from this proscription."); *Chappell v. Wallace*, 462 U.S. 296, 304 (1983) (noting that "'our citizens in uniform may not be stripped of basic rights simply because they have doffed their civilian clothes,'" and that the "Court has never held, nor do we now hold, that military personnel are barred from all redress in civilian courts for constitutional wrongs suffered in the course of military service") (internal citations omitted).

**B.    Movants Have Exhausted Military Remedies.**

"RFRA includes no administrative exhaustion requirement and imposes no jurisdictional threshold. No exemption, whether … express or implied, insulates the military from review in the district court." *Navy SEAL 1* PI Order, at *13.[7] In any case, each Movant has pursued and exhausted military remedies, and with the exception of Davis, all Movants' RAR appeals have been denied. *See* Ex. 3, Hamilton Appeal Denial Letter; Ex. 4, Mazure Appeal Denial Letter; Ex. 5, McAfee Appeal Denial Letter; Ex. 6, Singletary Appeal Denial Letter. With respect to Movant Davis, whose RAR appeal is still pending, she satisfies *Mindes'* exceptions for futility and inadequacy of military remedies. *See* Ex. 10, ECF 13 at 7-10.

**C.    Movants' Claims Are Ripe.**

As noted above, each Movant's RAR has been denied, and all but Davis have had their appeals denied as well. Davis need not wait for the final denial to for her claim to be ripe.[8] Accordingly, the harms faced by Movants due to

---

[7] *See also Singh v. Carter*, 168 F. Supp. 3d 216, 226 (D.D.C. 2016) (exhaustion is not required for a RFRA claim); *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 838 (9th Cir. 2012) ("We decline . . . to read an exhaustion requirement into RFRA where the statute contains no such condition, see 42 U.S.C. §§ 2000bb– 2000bb–4, and the Supreme Court has not imposed one."); *Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552 (6th Cir. 2017) (declining to read an exhaustion requirement into a statute that did not contain such a requirement).

[8] The Supreme Court made clear that where there is an actual and well-founded fear that a requirement will be enforced against a plaintiff, the claim is ripe, and they have standing. *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988). And

Defendants' violations of their constitutional and statutory rights are neither theoretical nor speculative.

Movants have already suffered severe adverse employment, administrative, and disciplinary actions. Movants are in the process of involuntary separation, forced or induced retirement/constructive discharge, or dismissal and will soon face a Board of Inquiry to determine their discharge status or other disciplinary proceedings. *See* Ex. 4, Mazure Decl., ¶ 7; Ex. 5, McAfee Decl., ¶ 10; Ex. 6, Singletary Decl., ¶6.

Due to their vaccination status and/or vaccination status, Movants LTC Hamilton and Colonel McAfee have been relieved of command or other senior positions,[9] which in the case of LTC Hamilton will prevent him from achieving full retirement. *See* ECF 1-1, Hamilton Decl., ¶ 30. Movants have received one or more letters of reprimand, or other paperwork that will adversely affect their discharge status, and due to their vaccination status, they are subjected to discriminatory policies that restrict travel, training to maintain

---

where, as here, a government policy with exemptions vests "unbridled discretion in a government official over whether to permit or deny" First Amendment protected activity, one who is subject to the law or policy may challenge it facially without the necessity of first applying for, and being denied, that same exemption. *City of Lakewood v. Plain Dealer Publ'n Co.*, 486 U.S. 750, 755-56 (1988); *see also CAMP Legal Def. Fund v. City of Atlanta*, 451 F.3d 1257, 1274 (11th Cir. 2006).

[9] *See* ECF 1-1, Hamilton Decl., ¶ 10 (selection cancelled to lead Geospatial Intelligence (GEOINT) Analysis Squadron, overseeing 400 personnel and $40MM budget); Ex. 5, McAfee Decl., ¶ 8 (removed from senior instructor position at National Defense University).

qualifications for their current positions, selection for future opportunities like assignments, and thus impact future promotion.[10] The use of religious belief, under pretext of vaccination status, for assignments is unlawful discrimination.  In addition, Plaintiffs will also face substantial financial losses in terms of lost pay and benefits due to separation, dismissal and early retirement approaching $1,000,000 or much more in many cases. *See* ECF 25, ¶ 15 (Hamilton), ¶ 16 (Mazure), ¶ 22 (McAfee).

## II.   SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

### A.   Defendants' Religious Exemption Process Violates RFRA.

#### 1.   Defendants' Have Substantially Burdened Plaintiffs' Free Exercise Rights, Triggering Strict Scrutiny.

RFRA restricts governmental action that "substantially burden[s] a person's exercise of religion[,] even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1. Defendants have substantially burdened Movants' free exercise rights because the mandate forces them to "decide whether to lose their livelihoods or violate sincerely held religious beliefs." *Navy SEALs 1-26* PI Order, at *9. "By pitting their consciences against their

---

[10] *See* Ex. 2, Davis Decl., ¶ 13 (letter of reprimand, PCS restrictions, and non-deployable); ECF 1-1, Mazure Decl., ¶ 13 (training and travel restrictions may result in loss of instructor qualifications) & Ex. 4, Mazure Decl., ¶ 8 (letter of reprimand); Ex. 5, McAfee Decl., ¶ 30 (reassigned based on religious beliefs); Ex. 6, Singletary Decl., ¶6 (letter of counseling leading to Board of Inquiry) & ¶ 9 (restricted from training, travel and PCS and non-deployable).

livelihoods, the vaccine requirements would crush Plaintiffs' free exercise of religion." *Navy SEALs 1-26* Stay Order, at *9.

Movants have thus presented *prima facie* evidence, based on Defendants' own data, that Defendants have substantially burdened Plaintiffs' exercise of religion by treating it less favorably than comparable secular activities. This evidence triggers strict scrutiny and shifts the burden of proof to the government to demonstrate that its policy serves a compelling governmental interest using the least restrictive means. *O Centro Espirita Beneficiente Uniao do Vegetal*, 546 U.S. 418, 429 (2006) ("*O Centro*"). RFRA strict scrutiny applies to both "the asserted harm of granting specific exemption to particular religious claimants," and of "the marginal interest in enforcing the challenged government action in that particular context." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 726-27 (2014) ("*Hobby Lobby*").

### 2. Defendants' Blanket Denial Policy Does Not Serve a Compelling Governmental Interest.

To carry its burden under RFRA, the government must demonstrate a compelling interest in denying religious accommodation to the specific claimant before them: there must be a compelling interest "supporting the specific denial of a specific plaintiff's exemption and the absence of an alternative for that plaintiff." *Navy SEAL 1* PI Order, at *10. To meet this burden with respect to Movants, Defendants must articulate a compelling

interest in vaccinating each Movant where: (1) Movants are healthy and fit service members in their 30s and 40s; (2) most Movants have had one or more previous infections from which they have recovered (*i.e.*, Davis, Mazure, Singletary); (3) the Air Force has a vaccination rate in excess of 98%; (4) where the government has acknowledged that the required vaccine and dosage do not prevent infection or transmission;[11] (5) the dominant Omicron strain produces mild, cold-like symptoms, *see* Ex. 7, McCullough Decl., ¶ 11; and (6)Movants are willing, and most have formally applied, to take an alternative vaccine to which they do not have religious objections. *See* Ex. 3. Hamilton Decl. ¶¶ 6 & 11; Ex. 4, Mazure Decl., ¶ 7; Ex. 5, McAfee Decl., ¶ 25; Ex. 6, Singletary Decl., ¶ 10.

Defendants' "broadly formulated interest in national security," *Navy SEALs 1-26*, at *10, will not suffice. Nor will simply invoking "magic words" like "military readiness and health of the force." *Navy SEAL 1*, at *17 (citation omitted). "Instead, the government must proffer "specific and reliable evidence" (not formulaic commands, policies or conclusions)," *id.* at *15:

---

[11] *See, e.g.,* Eric Sykes, *CDC Director: Covid Vaccines Can't Prevent Transmission Anymore*, KMOX New Radio St. Louis (Jan. 10, 2022), *available at*: https://www.msn.com/en-us/health/medical/cdc-director-covid-vaccines-cant-prevent-transmission-anymore/ar-AASDndg (last visited May 17, 2022).  *See also BST Holdings, LLC v. OSHA*, 17 F.4th 604, 616 n.19 (5th Cir. 2021); McCullough Decl., ¶ 8 ("None of the vaccine manufactures have demonstrated in a conclusive, randomized, placebo-controlled trial that the COVID-19 vaccines reduce the risk of Omicron infection or any of its complications.").

demonstrating that the military considered both the marginal increase, if any, in the risk of contagion incurred by granting the requested exemption and the marginal detrimental effect, if any, on military readiness and the health of the force flowing from the specific denial of [plaintiff's] request for religious exemption …

*Id.* at *18. "Without individualized assessment," the Defendants "cannot demonstrate a compelling interest in vaccinating these particular Plaintiffs." *Navy SEALs 1-26* PI Order, at *10. As explained below, Defendants' form letter denials and recitation of magic words cannot meet RFRA's requirements. *See infra* Section II.A.3.a.

### a)   Defendants Have No Compelling Interest in Discriminating Against Religious Exercise.

The Air Force has granted nearly two thousand exemptions for secular reasons, while granting zero or nearly zero religious accommodations. *See supra* note 3. This unexplained and unjustified discrimination against religious accommodations and in favor of secular exemptions precludes any finding that Defendants have a compelling governmental interest in denying Movants' RARs.[12] Such "underinclusiveness … is often regarded as a telltale

---

[12] *See, e.g., Air Force Officer*, 2021 WL 468799, at *7 ("At bottom, Defendants simply don't explain why they have a compelling interest in Plaintiff being vaccinated while so many other Air Force service members are not."); *NAVY SEAL #1, et al. v. Biden, et. al.*, MDFL Case No. 8:21-cv-02429, Order for Temporary Restraining Order; ("The record creates a strong inference that the services are discriminatorily and systematically denying religious exemptions without a meaningful and fair hearing and without the showing required under RFRA (while simultaneously granting medical exemptions and permitting unvaccinated persons to continue in service without adverse consequence)").

sign that the government's interest in enacting a liberty-restraining pronouncement is not in fact compelling." *Navy SEALs 1-26* Stay Order, at *12 (citation and internal quotations marks omitted).

The Air Force statistics and whistleblower statements regarding the Air Force's 2021 CORONA Conference (*i.e.*, that no religious accommodations would be granted) are further confirmed by the declaration of Air Force Colonel James Poel Air Force's submitted in a related proceeding. *See* Ex. 8, Poel Decl. Colonel Poel admits that the Government is deliberately engaged in the systemic denial of religious exemptions because, he contends, they do so to allow for more medical and administrative exemptions. *Id.* ¶ 7. Colonel Poel suggests that the number of vaccination exemptions are a zero-sum game when it comes to allowing the Air Force's clearly favored exemptions.

### b) Medical Exemptions are Comparable to Religious Accommodations.

Further, religious and secular exemptions are in fact comparable and cannot be distinguished based on duration. *See* ECF 33 at 10-14. DOD and Air Force regulations treat all religious accommodations as temporary, and they may be revoked or withdrawn at any time.[13] In any case, neither RFRA nor the

---

[13] *See* ECF 33-5, DOD Instruction 1300.17, *Religious Liberty in the Military Services*, ¶ 3.2.g.1(Sept. 1, 2020) ("an approved accommodation may be subject to review and recission, in whole or in part, at any time" based on change in circumstances); ECF 33-6, Dept. of the Air Force Instruction ("DAFI") 52-501, *Religious Freedom in the Department of the Air Force*, ¶¶ 5.7.2 (reevaluation due to change in circumstance),

14

First Amendment distinguish between temporary and permanent exemptions. Further, all four Movants whose RAR appeals have been denied are willing or have formally applied for authorization to meet the DOD Mandate's requirements using alternative, ethical vaccines, demonstrating that their accommodations are time limited. *See* Ex. 3. Hamilton Decl. ¶¶ 6 & 11; Ex. 4, Mazure Decl., ¶ 7; Ex. 5, McAfee Decl., ¶ 25; Ex. 6, Singletary Decl., ¶ 10.

### c) Achieving 100% Vaccination Rate Is Not a Compelling Governmental Interest.

The government "does not have a compelling interest in each marginal percentage point by which its goals are advanced." *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 803 n.9 (2011). Accordingly, going from 98.4% vaccination rate to 100% cannot be a compelling governmental interest, and certainly not where, as here, thousands may remain unvaccinated for secular reasons, while no one may remain unvaccinated for religious reasons.

### 3. Defendants' Policy Is Not the Least Restrictive Means for Achieving Government's Purported Interests.

Defendants have failed to demonstrate that their policies of uniformly denying Plaintiffs' religious exemption requests are the least restrictive means

---

5.7.4 (commander may withdraw accommodation temporarily or permanently based on compelling governmental interest) (June 23, 2021). Moreover, any assertions that a medical exemption is "temporary" is purely speculative, *i.e.*, that scientists in the future *might* develop a hypothetical vaccine that does not cause the allergic reaction. However, from the perspective of the currently available vaccines, the medical condition is permanent.

of furthering their purportedly compelling interests, or for that matter, that any less restrictive alternatives to vaccination were ever seriously considered.

### a) Defendants Identical Denial Letters Did Not Provide Individualized Assessments.

The Air Force's RAR appeal denial letters are nearly identical form letters. These denial letters each contain three paragraphs. The first and third paragraphs in each are identical in each letter. Most of the second paragraph in each letter is also identical except for prewritten sentences inserted as described below that generically describe the Movants' roles and responsibilities:

> The Department of the Air Force has a compelling government interest in requiring you to comply with the requirement for the COVID-19 immunization because preventing the spread of disease among the force is vital to mission accomplishment. In light of your circumstances, your present duty assignment requires [*Insert standardized phrase applicable to duty.*] frequent contact with others, and these duties are not fully achievable via telework or with adequate distancing. [*Insert 1-3 prewritten, standardized sentences if applicable.*] We must be able to leverage our forces on short notice as evidenced by recent worldwide events. Your health status as a non-immunized individual in this dynamic environment, and aggregated with other non-immunized individuals in steady state operations, would place health and safety, unit cohesion, and readiness at risk. Foregoing the above immunization requirements would have a real adverse impact on military readiness on public safety. There are no less restrictive means available in your circumstance as effective as receiving the above immunizations in furthering these compelling government interests.

*See* Ex. 3, Hamilton RAR Denial Letter; Ex. 4, Mazure RAR Denial Letter; Ex. 5, McAfee RAR Denial Letter; Ex. 6, Singletary RAR Denial Letter. No Movant's circumstances were taken into consideration in any meaningful sense. The appeals are being categorically denied without any individualized review, as required by RFRA and the First Amendment. These form letters end the careers of Airmen who have devoted their adult lives to serving the United States. They deserve better, and at a minimum what the law requires.

In these denial letters, Defendants fail to demonstrate, as they must, that the less restrictive measures "were tried and failed, or that the alternatives were closely and examined and ruled out for good reason." *Bruni v. City of Pittsburgh*, 824 F.3d 353, 370 (3d Cir. 2016). Instead, these letters indicate that Movants' proposed alternatives were denied because the government's "chosen route [of 100% vaccination] was easier," rather than a determination that "imposing lesser burdens on religious liberty would fail to achieve the government's interests." *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 633 (2d Cir. 2020) (citation and quotation marks omitted).

> **b)  Defendants Fail Altogether to Consider Movants' Alternatives Or Natural Immunity.**

Movants have proposed alternative, less restrictive means and provided evidence that these alternatives had been employed successfully over the past two years by the commander, unit, or vessel while achieving mission objectives

and limiting the spread of COVID-19.[14] The denial letters either failed altogether to mention proposed alternatives, or dismissed them without any discussion or explanation. *See* Ex. 3, Hamilton RAR Appeal Denial Letter; Ex. 4, Mazure Appeal Denial Letter; Ex. 5, McAfee RAR Denial Letter; Ex. 6, Singletary RAR Appeal Denial Letter.

Movants point out that the optimal less-restrictive means of curbing the spread of COVID-19 is testing for the virus, combined with quarantining those who test positive. This is not only less restrictive but also more effective. According to Dr. McCullough, a "regime of testing airmen and isolating those who test positive would do far more than the current vaccine mandate to slow the transmission of COVID-19 among airmen." Ex. 7, McCullough Decl., ¶ 13.

Defendants also dismissed, or failed altogether to consider, natural immunity and the cumulative impact of natural immunity with Movants' proposed less restrictive measures. In Dr. McCullough's expert opinion, "[n]atural immunity acquired by contracting and recovering from COVID-19 is

---

[14] *See, e.g.,* Ex. 4, Mazure Decl., ¶ 2 (describing how he had "provided instruction to over 2,500 personnel between March 16, 2021 to December 2021 without vaccination and zero cases of COVID being traced to our training"); Ex. 5, McAfee Decl., ¶ 14 (described how there was zero community spread at his unit and 100% mission effectiveness through all COVID until November 2021 after mass vaccination when cases soared and discriminatory testing was coincidentally implemented); ECF 1-1, Hamilton Decl., ¶¶ 31-32; Ex. 6, Singletary Decl., ¶ 14 (explaining that it is physically impossible to transmit COVID in his role as flight instructor because instructor and student have separate oxygen mask, and that he has successfully employed other less restrictive measures to fulfill his mission).

superior to any immunity that might be conveyed by a COVID-19 vaccine." Ex. 7, McCullough Decl. ¶ 11.  Defendants' conclusory assertions fail to show that "COVID-19 vaccine[s] … provide more sufficient protection" than Movant's "natural immunity coupled with other preventive measures." *Air Force Officer*, 2022 WL 468799, at *10 (citation and quotation omitted).

### c) Defendants Failed to Consider Affirmative Obligation to Grant Accommodations.

In addition, the denial letters fail altogether to consider the Armed Services' affirmative obligation to provide accommodation, or to consider even minimal changes to the workspaces over which the Armed Services control. Rather than accommodate as required by law, the Air Force cites its own, self-imposed and unlawful policies as reasons to deny accommodation. For example, Air Force denial letters cited the need to work with classified information in close quarters or proximity as the reasons that no less restrictive means were feasible. *See* Ex. 3, Hamilton RAR Appeal Denial Letter. Such requirement and restriction is a self-imposed as alternatives exist.   The denial letters fail to explain why the current requests for accommodation are different from previous accommodations that have been granted for religious or secular reasons. *See* ECF 1-1, Hamilton Decl., ¶ 31-32.

**d)** **Mandating an Obsolete and Ineffective Vaccine Cannot Satisfy Strict Scrutiny.**

Finally, Defendants cannot satisfy either prong of strict scrutiny by mandating 100% vaccination with a vaccine that is known to be ineffective and "obsolete" against the Omicron variant that accounts for nearly 100% of current cases. Ex. 7, McCullough Decl., ¶ 12. The predicate for mass vaccination is stopping the spread.  The mandated vaccines do not stop the spread. *See id*. Defendants have failed entirely to account for the impact of the Omicron variant, and the minimal and rapidly declining efficacy of the vaccine against it, in performing this assessment.

Nor is there any indication that Defendants have reconsidered their policy in light of the 15-fold increase in documented infections that occurred in the weeks immediately following the vaccination deadline. *See Navy SEAL 1* Stay Order, at 13-14; *Navy SEAL* PI Order, at *18 & n.11. Yet despite this increase in infections from the "relatively weak and transient Omicron variant," *Navy SEAL 1* Stay Order, at 15, which are "coming and going all the time," among 100% vaccinated crews, the new variant has had "really no operational impact."[15] The Omicron variant reinforces the conclusion that

---

[15] Diana Correll, *Omicron Isn't Significantly Impacting Navy Operations, Admiral Says*, NavyTimes (Jan. 27, 2022), available at: https://www.navytimes.com/news/your-navy/2022/01/27/omicron-isnt-significantly-impacting-navy-operations-admiral-says/ (last visited Mar. 1, 2022).

Defendants cannot show that "vaccination is actually necessary by comparison to alternative measures[ ], since the curtailment of free [exercise] must be actually necessary to the solution." *Air Force Officer*, at *11 (citation and quotation marks omitted).

### B.      Defendants Have Violated First Amendment.

The RFRA and First Amendment analyses are largely identical, except Movants must additionally establish that Defendants' religious exemption policy is neither neutral nor generally applicable. The Air Force's exemption policy cannot be neutral or generally applicable because it "incorporates a system of individual exemptions, made available in this case at the 'sole discretion' of the [Surgeon General]." *Fulton v. City of Phila.*, 141 S. Ct. 1868, 1878 (2021) ("*Fulton*"). The official "may not refuse to extend that [exemption] system to cases of 'religious hardship' without compelling reason." *Id.* But that is just what the Air Force has done in granting nearly 2,000 medical and administrative exemptions, while granting zero or near zero religious accommodations. *See supra* "Statement of Facts." The Air Force policy thus fails strict scrutiny due to its undeniable and intentional discrimination against religious exercise in favor of comparable secular activity, and for the other reasons identified in the preceding RFRA analysis.

The Defendants certainly know that they have violated the law and cannot make the requisite showing. There is another term for this: hostility to

religion emanating from the top levels of the Air Force and the DOD, inducing undue command influence throughout the Department. Defendants' hostility to religion and abuse of authority to deny Movants' their First Amendment rights to free exercise is patently unconstitutional. *See, e.g., Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 138 S. Ct. 1719 (2018).

## C. Defendants' Religious Exemption Policy Violates Plaintiffs' Fifth Amendment Due Process Rights.

The Defendants' policy of systematic and uniform denial of 100% of RARs is just as much a deprivation of their Fifth Amendment Due Process rights, U.S. CONST. AMEND. V, as it is of First Amendment Free Exercise rights. Due process requires not only notice and an opportunity to be heard, but also an impartial decisionmaker where, unlike here, the outcome is not "predetermined." *See, e.g., McCarthy v. Madigan*, 503 U.S. 140, 148 (1992). The zero approval rate of Airmen who may continue to serve our nation shows that the Armed Services have "predetermined the denial of the religious accommodations." This is no accident, but the intended result of a process designed to deny Plaintiffs' free exercise rights without procedural due process.

## III. MOVANTS HAVE SUFFERED IRREPARABLE HARM.

Movants have shown that they are currently being deprived of their rights to free exercise through procedures that do not meet the requirements of RFRA or the First or Fifth Amendments. As the Supreme Court observed in

*Cuomo*, there can be "no question" that these types of restrictions on religious exercise "will cause irreparable harm." *Cuomo*, 141 S.Ct. at 67; *see also Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion) ("[t]he loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury."). This applies equally to violations of statutes like RFRA that enforce First Amendment freedoms. *See Opulent Life Church*, 697 F.3d at 295) ("[C]ourts have held that a plaintiff satisfies the irreparable harm analysis by alleging a violation of RFRA.").[16] Movants now must either "follow a direct order contrary to a sincerely held belief or … face immediate processing for separation or other punishment," which "undoubtedly causes irreparable harm" and is "redressable by a preliminary injunction." *Navy SEAL 1* PI Order, at \*19 (citation omitted).

## IV.   BALANCE OF EQUITIES & PUBLIC INTEREST

The third and fourth requirements for issuing a stay and/or preliminary injunction—the balance of harms and whether the requested injunction is in the public interest—"merge when the Government is the opposing party."

---

[16] The Air Force's mandate causes irreparable harm because of its coercive effect, which forces a "crisis of conscience" that is itself a harm for the religious objector. As Judge Ho said, "it is a quintessentially irreparable injury, warranting preliminary injunctive relief." *Sambrano v. United Airlines, Inc.*, 194 F.4th 839, 842 (5th Cir. 2021) (Ho, J., dissenting from denial of injunction pending appeal). "It is difficult to imagine how a crisis of conscience, whether instigated by government or industry, could be remedied by an award of monetary damages." *Id.*

*Nken*, 556 at 435. Both factors favor Plaintiffs and issuance of injunction with respect to the Plaintiffs before this Court. "[I]njunctions protecting First Amendment freedoms are always in the public interest," *Navy SEALs 1-26* Stay Order, at *13, while "[t]he public has no interest in enforcing an unconstitutional" regulation. *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006). Further, there is no injury to the public interest "from recognizing a person's constitutional or statutory right …, especially when the statute creating the right expressly authorizes such judicial vindication." *Navy SEAL 1* PI Order, at *20.

The government's claims of harm are undercut by the facts that: (1) the Air Force successfully operated without these mandates for over a year into the pandemic; (2) the Air Force vaccination rate is already in excess of 98% (and a large percentage of the remainder have been granted medical or administrative exemptions), belying any claims that granting a religious exemption to a few service members could harm its mission where it already accommodates thousands of medical and administrative exemptions; and (3) other mitigation measures exist, and previously were implemented successfully by the Air Force and Movants. Conversely, the Defendants cannot claim to suffer any harm where the harm "results only from [D]efendants' own failure to comply with RFRA." *Navy SEAL 1* PI Order, at *20.

24

If national security and military readiness really required immediate and 100% compliance, why not simply announce that no religious exemptions will be granted, rather than forcing service members to go through a lengthy, multi-step process with a predetermined outcome (denial and discharge)? The question answers itself: the latter option permits Defendants to present courts, service members and the public with the illusion of a process that respects service members' religious liberties. Neither option, however, is constitutional.

## V.     CONCLUSION

Plaintiffs request that the Court set a briefing schedule to permit the court to grant the relief requested herein as expeditiously as possible.

Respectfully Submitted,

/s/ Brandon Johnson
Brandon Johnson, DC Bar No. 491370
Defending the Republic
2911 Turtle Creek Blvd., Suite 300
Tel. (214) 707-1775
Email: bcj@defendingtherepublic.org

## CERTIFICATE OF SERVICE

This is to certify that I have on this day e-filed the foregoing Motion using the CM/ECF system.

Dated: May 18, 2022                    Respectfully Submitted,

/s/ Brandon Johnson
Brandon Johnson