## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**ERIN DAVIS,** *et al.,*

       *Plaintiffs,*

   v.                  **No. 3:22-cv-00237-MMH-MCR**

**LLOYD AUSTIN, III,** *et al.*

      *Defendants.*

### PLAINTIFFS' RESPONSE IN OPPOSITION TO
### DEFENDANTS' MOTION TO DISMISS

On August 24, 2021, the Department of Defense ("DOD") issued its COVID vaccine mandate ("DOD Mandate"). The record of the past year has eliminated any scientific, legal or military basis the mandate may have had.

On July 21, 2021, President Biden confidently predicted, without qualification, that "You're not going to get COVID if you have these vaccinations."[1] On July 21, 2022, exactly one year later, the fully vaccinated and double boosted President contracted COVID, an event the President and his doctors "knew … was going to happen," because "at some point, everyone is going to get COVID." Ex. 1, July 21, 2022 White House Press Briefing, at 16.

On August 1, 2021, Secretary Kendall congratulated the Air Force, declaring victory over COVID: "You've met and defeated a pandemic." Ex. 14

---

[1] *See* Jason Lemon, *Video of Biden Saying Vaccinations Prevent COVID Resurface After Infection,* NEWSWEEK (July 21, 2022), available at: https://www.newsweek.com/joe-biden-2021-video-saying-vaccinations-prevent-covid-resurfaces-1726900 (last visited Aug. 8, 2022).

at 2. On August 11, 2022, the Centers for Disease Control and Prevention ("CDC") acknowledged that the vaccines do not prevent infection or transmission and revised its COVID prevention recommendations to "no longer differentiate based on … vaccination status."[2]

Defendants, however, have not altered their policies to reflect the scientific consensus or their own statements. Instead, they have accelerated their discriminatory treatment and attempts to purge of those who, like Plaintiffs, oppose the novel, fraudulent and ineffective mRNA treatments based on their sincerely held religious beliefs, as well as concerns regarding the illegality of the mandate, safety, and readiness. The military faces the loss of tens or hundreds of thousands of service members.[3] The losses from the mandate of current and future service members are so great that they pose a

---

[2] Ex. 2, CDC Guidance, at 3. Pfizer's CEO acknowledged back in January 2022 that the mandated two-dose regimen provides little, if any, protection against Omicron. *See* ECF 13 at 19 n.11. Omicron is more transmissible, but less deadly to healthy adults, with zero deaths among active-duty service members since November 2021 when Omicron emerged. *See* Ex. 3, Rans Decl. at 12-13.

[3] This includes the several thousand that have already been discharged, nearly 25,000 who have submitted religious accommodation requests ("RAR"), *see infra* Section II.A, Table, and nearly 270,000 that are partially vaccinated. *See DoD. Coronavirus: DOD Response, Table: DOD Vaccination Data,* available at: https://www.defense.gov/Spotlights/Coronavirus-DoD-Response/ (last visited July 18, 2022). In addition, the military has barred 60,000 Army reservists and National Guard from drilling or pay. *See* Allie Griffin, *Army Bars More Than 60K National Guards, Reservists from Service, Cutting Off Pay*, NY Post (July 8, 2022), available at: https://nypost.com/2022/07/08/army-cuts-pay-from-over-60k-unvaccinated-national-guard-reserves/ (last visited August 18, 2022).

"long-term threat to the all-volunteer force."[4]  The only thing putting a break on these unconstitutional, discriminatory, and arbitrary policies destroying military readiness are the class-wide injunctions issued against three of the Services to date.[5]

## ARGUMENT

## I.    THIS COURT HAS SUBJECT MATTER JURISDICTION.

### A.    Defendants' Actions Are Reviewable and Justiciable.

Plaintiffs challenge a set of discrete, final, inter-related and unlawful agency actions.[6] Each challenged action constitutes a "major policy decision,"

---

[4] Tom Jurkowsky, *The Military Has a Serious Recruiting Problem – Congress Must Fix it*, The Hill (June 21, 2022) (*quoting* Sen. Thom Tillis (R-N.C.)), available at: https://thehill.com/opinion/national-security/3527921-the-military-has-a-serious-recruiting-problem-congress-must-fix-it/ (last visited July 17, 2022). *See also* Maj. Gen. James Eifert, *The Vaccine Mandate Puts National Security at Risk*, WALL STREET J. (Aug. 4, 2022) (Commanding General of Florida National Guard), available at: https://www.wsj.com/articles/vaccine-mandate-puts-national-security-at-risk-involuntary-termination-armed-forces-military-covid-pandemic-lockdowns-11659645396 (last visited Aug. 12, 2022).

[5] *See Doster v Kendall*, 2022 WL 2760455 (S.D. Oh. July 14, 2022) (Air Force class-wide temporary restraining order) ("*Doster* TRO Order"); *Doster v. Kendall*, 2022 WL 2974733 (S.D. Ohio July 27, 2022) (Air Force class-wide preliminary injunction) ("*Doster* PI Order"); Ex. 4, *Colonel Financial Management Officer v. Austin*, MDFL No. 8:22-cv-1275-SDM-TGW, ECF 229 (Aug. 18, 2022) ("*CFMO*") (Marine Corps); *Navy SEALs 1–26 v. Austin*, No. 4:21-cv-1236, 2022 WL 1025143 (N.D. Tex. Mar. 28, 2022) (Navy), *appeal filed* No. 22-10534 (5th Cir. May 27, 2022).

[6] In the Second Amended Complaint ("SAC"), ECF 52, Plaintiffs challenge: (1) the DOD Mandate, *see* ECF 1-2; (2) the Air Force Mandate, ECF 1-7; (3) the Defendants' determination that Emergency Use Authorization ("EUA") vaccines are legally interchangeable with, and may be mandated "as if," they were fully licensed by, and labeled in accordance with, Food and Drug Administration requirements ("DOD Interchangeability Directive"), *see* ECF 1-11 (Pfizer/BioNTech), ECF 1-7 (same), 57-1 (Moderna); (4) the categorical elimination of existing medical exemptions

rather than, as Defendants' contend, a routine, "day-to-day" exercise of agency discretion, enforcement decisions, or personnel management decisions. *Nat'l Treasury Employees Union v. Horner*, 854 F.2d 490, 496 (D.C. Cir. 1988). Moreover, Courts do not defer to agency expertise where, as here, the agency has exceeded its statutory authority and/or violated federal statutes or its own regulations in an "attempt to usurp major policy decisions properly made by Congress." *Ford Motor Co. v. NLRB*, 441 U.S. 488, 497 (1979) (citation and quotation marks omitted). Instead, courts review the agency's legal interpretation of the governing statute because such actions are not matters "peculiarly within the agency's expertise and discretion." *Crowley Caribean Transp., Inc. v. Pena*, 37 F.3d 671, 677 (D.C. Cir. 1994).

Defendants' actions apply uniformly to hundreds of thousands of Air Force personnel. The challenged actions have already resulted in the separation of 672 Airmen (as of June 28, 2022), *see* Ex. 5 at 2, before the issuance of the *Doster* injunction, which temporarily prevents the discharge of 9,000 Airmen with RARs. *See* SAC, ¶ 38. Defendants' actions also substantially modify the terms of eligibility for enlistment, retention, deployment, promotion, completing an existing term of service, and disciplinary rules. The Categorical RAR and ME Bans, which deny service members the

---

("Categorical ME Ban"), *see* SAC, ¶ 139; and (5) Defendants' policy not to grant any RARs ("No Accommodation Policy" or "Categorical RAR Ban"). *See* SAC, ¶¶ 37-43.

4

individualized assessments of fitness for service required by law and service regulations, based on obsolete scientific evidence or animus, are unlawful "major policy decisions" for the same reasons as the military's categorical bans of transgender and HIV+ service members.[7]

## B. Plaintiffs' Claims Are Justiciable Under *Mindes v. Seaman*.

Federal courts have consistently rejected Defendants' sweeping "military nonjusticiability" argument,[8] and the Supreme Court reaffirmed the justiciability of RFRA claims in just the past few months.[9] Congress expressly

---

[7] *See generally Roe v. Shanahan*, 359 F.Supp.3d 382, 421 (E.D. Va. 2019) ("*Roe I*") (enjoining categorical ban on HIV-positive service members), *aff'd sub nom.*, *Roe v. Dept. of Defense*, 947 F.3d 207 (4th Cir. 2020) ("*Roe II*"); *Harrison v. Austin*, 2022 WL 1183767 (E.D. Va. Apr. 6, 2022) (same) ("*Harrison*"); *Doe 1 v. Trump*, 275 F.Supp.3d 167(D.D.C. 2017), *stay denied pending appeal* 2017 WL 6553389 (D.C. Cir. Dec. 22, 2017) (enjoining transgender ban); *Stone v. Trump*, 280 F.Supp.3d 747 (D. Md. 2017), *stay denied pending appeal* 2017 WL 9732004 (4th Cir. Dec. 21, 2017). These courts found these bans to be "major policy decisions" or "major personnel policies," even though they impacted dozens or hundreds of service members, a tiny fraction of these tens or hundreds of thousands categorically banned by the actions challenged here.

[8] *See, e.g., Emory v. Sec'y of Navy*, 819 F.2d 291, 294 (D.C. Cir.1987) ("The military has not been exempted from constitutional provisions that protect the rights of individuals.  It is precisely the role of the courts to determine whether those rights have been violated.")(citation omitted); *Dilley v. Alexander*, 603 F.2d 914, 920 (D.C. Cir. 1979) ("It is the duty of the federal courts to inquire whether an action of a military agency conforms to the law.").

[9] Defendants rely on Justice Kavanaugh's "concurring" opinion in *Austin v. Navy SEALs 1-26*, 142 S.Ct. 1301 (2022) ("*Austin*"), to suggest that the Supreme Court has expanded the military nonjusticiability doctrine. *See* ECF 68 at 2, 10-11 & 23. But Justice Kavanaugh was only speaking for himself, as no other Justice joined his opinion. In fact, his solo opinion appears to be a dissent because it was contrary to the majority's decision, which left in place the district court and the Fifth Circuit's findings that the plaintiffs' RFRA and First Amendment claims were justiciable, ripe, and satisfied all factors for a preliminary injunction. Justice Kavanaugh, by contrast,

granted federal courts jurisdiction to hear RFRA claims by granting a "person whose religious exercise has been burdened" the right to "assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000bb-1(c). "RFRA includes everyone from the President to a park ranger, … from the Chairman of the Joint Chiefs of Staff to a military recruiter…"[10]

To date, at least six U.S. District Court opinions have found that nearly identical RFRA and Free Exercise Claims satisfy the two-tier tests for justiciability set forth in *Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir. 1971) ("*Mindes*"),[11] and three have granted Service-wide injunctions against the Air

---

concluded that "RFRA does not justify judicial intrusion into military affairs in this case." *Navy SEALs 1-26*, 142 S.Ct. at 1302 (Kavanaugh, J., Concurring).

[10] *CFMO*, slip op. at 13. *See also id.* at 14 ("By enacting RFRA, Congress exercise[d] [its] plenary authority to guarantee "broad protection for religious liberty.")(*quoting Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 706 (2014)). Defendants bizarrely claim that *Employment Division v. Smith*, 494 U.S. 879 (1990) ("*Smith*") precludes Plaintiffs' Free Exercise claim. *See* ECF 62 at 24 n.15. But *Smith* was the impetus for RFRA, which passed with "singularly bipartisan support" at a time when one party held the Presidency and both houses of Congress. *CFMO*, slip op. at 12.

[11] *See Navy SEAL 1 v. Austin,* 2022 WL 710321 (M.D. Fla. Mar 2, 2022) ("*Navy SEAL 1*"), *stay denied pending appeal* No. 22-10645 (11th Cir. Mar. 30, 2022); *Air Force Officer*, 2022 WL 468799 (M.D. Ga. Feb. 15, 2022) ("*Air Force Officer*"); *Navy SEALs 1-26 v. Biden*, 2022 WL 34443 (N.D. Tex. Jan. 3, 2022) ("*Navy SEALs 1-26*"), *stay denied*, 27 F.4th 346 (5th Cir. Feb. 28, 2022) ("*Navy SEALs 1-26* Stay Order"); *Poffenbarger v. Kendall*, 2022 WL 594810 (S.D. Oh. Feb. 28, 2022) ("*Poffenbarger*"); *Doster v. Kendall*, 2022 WL 982299 (S.D. Ohio Mar. 31, 2022) ("*Doster*"). *See also CFMO* at 17 n.7 (questioning whether *Mindes* applies, but finding it satisfied for the same reasons as in *Navy SEALs 1-26* and *Air Force Officer*).

Force, Marine Corps, and Navy. *See supra* note **Error! Bookmark not defined.**. The Fifth Circuit held that RFRA "sets the standards binding on every department of the United States", and "[i]t undoubtedly applies in the military context."[12]

### 1.   Plaintiffs Have Exhausted Military Remedies and Qualify for Multiple Exhaustion Exemptions.

Each Plaintiff has had their initial RAR denied, and with the exception of Plaintiff Davis, have also had their appeal denied. *See* SAC, ¶¶ 68-69. With respect to Plaintiffs' Informed Consent and Administrative Procedure Act ("APA") claims, Defendants have eliminated nearly all categories of medical exemptions, so there are no military remedies for Plaintiffs to pursue.

Plaintiffs also qualify for each of the exhaustion exemptions.[13] The available remedies are futile and inadequate because the Air Force will not

---

[12] *Navy Seals 1-26* Stay Order, 27 F.4th at 346 (citation and quotation marks omitted). Defendants' assertion that any claims involving military personnel and retention matters are non-justiciable is contrary to the very authority on which they rely. *see* ECF 62 at 10-11 & 16-17 (*discussing Orloff v Willoughby*, 345, U.S. 83 (1953) ("*Orloff*")). The Court held that failure to assign Orloff duties for which he was drafted, *i.e.*, a doctor, would raise justiciable "questions not only of bad faith but of unlawful discrimination." *Id.* at 88. The statement about judicial noninterference referred to "legitimate Army matters." *Id.* at 94. Unconstitutional personnel policies are not "legitimate … matters" to which *Orloff's* admonition applies.

[13] These are: (1) futility; (2) inadequacy; (3) irreparable harm; (4) substantial constitutional questions. *Von Hoffburg v. Alexander*, 615 F.2d 633, 638-40 (5th Cir. 1980). Futility and inadequacy are addressed here, while the latter two are addressed under the first and second *Mindes* factors in the following section.

accommodate any Airmen who will stay in the Air Force. *See* SAC, ¶¶ 37-39.[14]
Even accepting the Air Force's statistics, as of June 28, 2022, a total of 9,139
RARs have been submitted with 109 "approved" (*i.e.*, just over 1.0% approved).
*See infra* Section II.A, Table. The SAC describe in detail the rigged process
used by the Air Force to ensure that all or nearly all RARs will be denied. *See*
SAC, ¶¶ 37-39 & 40-41. Courts have found the Air Force's and other Services'
remedies to be futile and inadequate so that exhaustion was not required.[15]

Plaintiffs are not required to exhaust their claims before the Air Force
Board for Correction of Military Records ("AFBCMR"). *See* ECF 62 at 18-19.
The AFBCMR "is a clemency-oriented body with authority to correct an error
or remove an injustice," but it has "no authority to declare the challenged

---

[14] The courts in *CFMO*, *Navy SEAL 1* and *Poffenbarger* found, based on admissions
by defense counsel, that the handful of "accommodations" were granted only to service
members at the end of their service and thus were in fact administrative exemptions.
*See CFMO* at 1, *Navy SEAL 1*, 2022 WL 534459, at *19; *Poffenbarger*, 2022 WL
594810, at *13 n.6. This is confirmed by the Air Force's policy to treat and report
RARs as "a subset of administrative exemptions," Ex. 6, August 9, 2022 DAF COVID-
19 Statistics, at 1, confirming that the Air Force will not grant an RAR unless that
person also independently qualifies for an administrative exemption.

[15] *See Doster*, 2022 WL 982299, at *9; *Doster* TRO Order, 2022 WL 2760455, at *6 n.2.
*See also Navy SEALs 1-26*, 2022 WL 34443, at *5-6 (Navy); *CFMO*, Slip Op. at 20 &
n.8 (Marine Corps); *Navy SEAL 1*, 2022 WL 534459, at *14 (Navy and Marine Corps).
Further evidence that the accommodation process is a futile, rigged game is provided
in a class action complaint filed in the Tampa Division by 31 military chaplains. *See*
Ex. 7, *Alvarado v. Austin*, MDFL No. 8:22-cv-1149. The military chaplains provide
sworn declarations detailing how Defendants have rigged the RAR process against
service members seeking religious accommodation and how chaplains who submitted
RARs, or assisted those with religious objections, were removed from the RAR process
and their other assigned duties. *See id.*, ¶¶ 103 & 117.

regulations invalid."[16] The AFBCMR may make recommendations, but "the Service Secretary always has the final say over [AFBCMR] decisions[.]" *Hodges v. Callaway*, 499 F.2d 417, 423 (5th Cir. 1974). For the Air Force, the review and appeal authorities are three- and four-star generals who report directly to Secretary Kendall, who issued the Categorical RAR Ban. There is no reason to believe that they will find the Secretary's policy to be an "error" or "injustice."

## 2.   Plaintiffs Satisfy the Four *Mindes* Factors.

First, Plaintiffs allege violations of specifically enumerated constitutional rights, namely, First Amendment Free Exercise rights as enforced by RFRA and the Fifth Amendment right to procedural due process. Plaintiffs' constitutional and statutory claims are strong. Several courts have found largely identical claims to have a substantial likelihood of success and to satisfy *Mindes* for that reason, *see supra* note 11, and Defendants are

---

[16] *Glines v. Wade*, 586 F.2d 675, 678 (9th Cir. 1978), *rev'd on other grounds sub nom. Brown v. Glines*, 444 U.S. 348 (1980). Nor is it empowered to resolve constitutional claims. *See, e.g., Adair v. England*, 183 F. Supp. 2d 31, 55 (D.D.C. 2002). Further, the concerns underlying this judicially-created exhaustion doctrine "are diminished to a vanishing point in this case," *Roe I*, 359 F.Supp.3d at 402, because Plaintiffs' RARs were addressed through a "complex, tiered administrative review process," "culminating in an extensive administrative record and final written decisions" reviewed and approved by three- and four-star generals who report directly to Secretary Kendall. *See* Ex. 8, Air Force Policy Directive 52-2, "Accommodation of Religious Practices in the Air Force," ¶ 2.8.1 (July 28, 2020) ("AFPD 52-2") & ECF 33-6, DAFI 52-201, ¶ 3.2 (for the Air Force the RAR approval authority is the MAJCOM commander, a three-star Lieutenant General or four-star General, and the final appeal authority is the Air Force Surgeon General, (three-star) Lieutenant General Dorothy Hogg).

currently subject to the *Doster* injunction.

Defendants contend that Plaintiffs' statutory claims do not satisfy *Mindes* because there have not been any successful "APA-based challenges" to "internal military policy" such as vaccine mandates.[17] This ignores the *Doe v. Rumsfeld* line of cases that repeatedly enjoined the DOD's anthrax vaccine mandate based on violations of the same statutes, involving the same conduct, by the same Defendant (DOD), and some of the same parties (namely, McAfee and Nykun).[18] Moreover, four of the six federal COVID-19 vaccine mandates were successfully challenged based on similar APA claims that the agency or

---

[17] ECF 62 at 21 (citation omitted). These claims were not addressed in the preliminary injunction motion, ECF 13, because the 25-page limit did not provide adequate space to brief all of Plaintiffs' claims and address complex justiciability questions; it was not because these claims are weak as Defendants' claim. *See* ECF 62 at 20. The cases cited by Defendant are inapposite. In *Doe#1-#14 v. Austin*, 2021 WL 5816632 (N.D. Fla. Nov. 12, 2021) ("*Doe #1-#14*"), the court denied an injunction because it accepted at face value Defendants' claims that the DOD Mandate was limited to "BLA-compliant" vaccines and that plaintiffs had failed to plead that they were denied such vaccines. *Id.*, at *6. In *Navy SEAL 1 v. Biden*, 2021 WL 5448970 (M.D. Fla. Nov. 22, 2021), these claims were dismissed because the original complaint did not plead that the APA provided a cause of action for the informed consent claim. *Crosby v. Austin*, 2022 WL 603874 (M.D. Fla. Mar. 1, 2022) followed *Doe#1-#14* in denying the 10 U.S.C. § 1107a based on failure to plead denial of a BLA-compliant vaccine. As discussed in the SAC, ¶¶ 129-131 and *infra* Section III.B, there is no policy limiting the mandate to "BLA-compliant" doses, which is a creation of Defendants' counsel. In any case, Plaintiffs did request BLA-compliant vaccines and were told that no FDA-approved vaccines were available. *See* SAC. ¶¶ 12, 14, 86.

[18] *See Doe#1 v. Rumsfeld*, 297 F.Supp. 2d 119 (D.D.C. 2003) ("*Rumsfeld I*") (granting preliminary injunction), *modified sub. nom.* 341 F. Supp. 2d 1 (D.D.C. 2004) ("*Rumsfeld II*") (permanent injunction), *modified sub nom.* 2005 WL 774857 (D.D.C. Feb. 6, 2005) ("*Rumsfeld III*") (consent decree modifying injunction).

executive order in question exceeded statutory authority.[19]

Second, Plaintiffs will be deprived of their First Amendment rights if review is denied, which presumptively causes irreparable harm. *See Elrod v. Burns*, 427 U.S. 347, 374 (1976). If the Court withholds review, "Plaintiffs would be required to choose between their First Amendment freedoms and their career in the Air Force." *Doster v. Kendall*, 2022 WL 2760097, at *5 (S.D. Oh. July 14, 2022) ("*Doster* MTD Order"). They also face irreparable harm from the involuntary administration of an unlicensed EUA vaccine without informed consent. *Rumsfeld I*, 297 F.Supp. 2d at 135.

Third, judicial review will not interfere with military functions. Providing religious accommodation for a few unvaccinated service members will not interfere with military functions where over 1,000 Airmen remain unvaccinated for secular reasons. *See Doster* MTD Order, at *5. *Accord Air Force Officer*, at *7. Plaintiffs merely seek to require Defendants to follow their own regulations that require individualized assessments of RARs, s*ee* ECF 33-5, DODI 1300.17 & Ex. 8, AFPD 52-2, and that expressly grant service members the "option to refuse" EUA products. *See* Ex. 9, DOD Instruction

---

[19] *See, e.g., Nat'l Fed'n of Indep. Bus. v. OSHA*, 142 S. Ct. 661 (2022) (enjoining OSHA vaccine Mandate); *Feds for Medical Freedom v. Biden*, 2022 WL 188329 (S.D. Tex. Jan. 21, 2022) (enjoining federal employee vaccine mandate); *Georgia, v. Biden*, 2021 WL 5779939 (S.D. Ga. Dec. 7, 2021) (enjoining federal contractor vaccine mandate); *Texas v. Becerra*, 2021 WL 6198109 (N.D. Tex. Dec. 31, 2021) (enjoining Head Start mandate); *Louisiana v. Becerra*, 2022 WL 16571 (W.D. La. Jan. 1, 2022) (same).

6200.02, § E3.4 (Feb. 27, 2008) ("DODI 6200.02"). "Requiring the military to follow its own policies does not interfere with its functions." *Roe II*, 947 F.3d at 218. *See also Rumsfeld I,* 297 F.Supp.2d at 128 (review of vaccination mandate addresses a "decision made in headquarters, not … a tactical decision military supervisors made in the field.").

Fourth, the challenged policies do not implicate military expertise or discretion. The question of whether Defendants' religious exemption policy "can withstand strict scrutiny doesn't require military judgment. Such an issue is a purely legal matter" appropriate for judicial review. *Air Force Officer*, at *8 (citation omitted). *Accord Navy SEALs 1-26*, at *8. By adopting the Categorical RAR and ME Bans, the DOD "declin[ed] to make individualized determinations regarding servicemembers' fitness for service," and thereby "failed to apply its expertise to the evidence before it." *Roe II*, 947 F.3d at 218.

## C.   Plaintiffs' Religious Liberty Claims Are Ripe.

Each Plaintiff has had their initial RAR denied, and all but Plaintiff Davis have had their appeals denied as well. As such, they meet the requirements for ripeness. *See, e.g., Navy SEAL 1*, at *14. Further, each Plaintiff is a member of the class certified in *Doster* where the Court found Air Force plaintiffs' claims to be ripe, concluding that they "need not wait for punishment to occur when such punishment is inevitable without intervention." *Doster* MTD Order, 2022 WL 2760097, at *3.

12

Defendants fundamentally mischaracterize Plaintiffs' injuries as being limited to discharge or separation, so that the action for which they seek review will not be final until after "several steps of discretionary Air Force decisionmaking." ECF 62 at 14. The Categorical RAR Ban was "final" when adopted, or at the latest when it was applied to Plaintiffs by denying their RARs or RAR appeals. *See CFMO*, slip op. at 19. An Airman "unlawfully denied a religious accommodation … suffers immediate, irreparable harm even if an administrative mechanism might afford some relief in the future." *Id.*

### D.    Plaintiffs' Statutory Claims Are Justiciable and Ripe.

Plaintiffs challenge discrete, final agency actions that violate the Informed Consent Laws and the APA.[20] The APA does not require exhaustion and instead "incorporates exhaustion requirements established by statute or agency rule." *Standage v. Braithwaite,* 526 F.Supp.3d 56, 84 (D. Md. 2021) (*discussing Darby v. Cisneros*, 509 U.S. 137 (1993) ("*Darby*")). *See also id.* (there is "no military exception to *Darby*."). Neither the APA nor 10 U.S.C. § 1107a require exhaustion. Defendants' actions are final because they set forth Defendants' consistent policies since the date of issuance that determine

---

[20] While the Informed Consent Laws do not provide a cause of action, Plaintiffs are "entitled to enforce [the statute's] substantive requirements through the judicial review provisions of the APA." *Int'l Brominated Solvents Ass'n v. Am. Conf. of Governmental Indus. Hygienists, Inc.,* 393 F.Supp.2d 1362, 1378 (M.D. Ga. 2005). *See also Doe #1-#14*, 2021 WL 5816632, at *2 & *7 n.12 (describing as "APA claims").

Plaintiffs' legal rights and obligations. *See infra* Section III.D.[21]   Nor have Plaintiffs' statutory claims been mooted by Defendants' offer of "Comirnaty-labeled" products. Service members who have been able to inspect the product have confirmed that it is an unlicensed EUA product.[22]

Defendants claim that Plaintiffs lack standing to challenge the DOD Mandate under 10 U.S.C. § 1107a for "objection to a vaccine on religious, philosophical or political grounds[.]" ECF 62 at 28 (citation omitted). 10 U.S.C. § 1107a imposes no such limitation, and Defendants provide no legal basis for reading such a limitation into the statute. Defendants' assertion that Plaintiffs' claims are not within the statute's "zone of interests," *id.* at 27 (citation and quotation marks omitted), is similarly without merit. While this test does not require Congress to have enacted a statutory provision "specifically intend[ing] to benefit the plaintiff,"[23] 10 U.S.C. § 1107a *was* specifically enacted in 2004 in

---

[21] Defendants appear to assert that Plaintiffs, despite having confirmed that only EUA vaccines were available, were further required to "formally request" an "FDA-licensed dose" (and have that request formally denied) for their claims to be ripe. *See* ECF 62 at 30 n.18. Defendants have not identified any statutory provision or rule for imposing this additional hurdle for bringing Informed Consent or APA claims.

[22] According to military whistleblowers, the vials available are not in fact FDA-approved Comirnaty. Instead, they are EUA products (from Lot FW1331, an EUA lot according to the CDC) that were not manufactured in accordance with the BLA or at BLA-approved locations. *See* Ex. 10, Aug. 18, 2022 Letter from Sen. Ron Johnson to DOD, FDA and CDC, at 1-2.

[23] *Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 118 S.Ct. 927, 935 (1998). *See also Mulhall*, 618 F.3d at 1290 (the plaintiff need only show that the relationship between the "alleged interest and the purposes of [the statute] is more than marginal.") (internal quotation marks omitted).

response to the *Doe v. Rumsfeld* cases to protect the informed consent rights of service members like Plaintiffs by granting a right to refuse EUA products.

### E.    This Court Has Jurisdiction to Grant the Relief Requested.

The *Doster* injunction grants the preliminary relief that Plaintiffs sought. But it does not provide the declaratory and permanent injunctive relief sought in the SAC, namely, a judgment finding that the challenged agency actions are illegal and must be vacated or enjoined similar to the DOD-wide injunctions granted in *Rumsfeld II* and *III. Austin* applied only to preliminary relief, and it did not purport to limit the scope of permanent injunctive or declaratory relief. Further, a declaratory judgment or vacatur will assist Plaintiffs in future administrative or court proceedings challenging individual personnel decisions or seeking correction of military records.

## II.    PLAINTIFFS' CONSTITUTIONAL CLAIMS

### A.    Plaintiffs Have Stated RFRA and First Amendment Claims.

Defendants do not seriously challenge the adequacy of Plaintiffs' religious liberty claims. The DOD and Air Force Mandates and the Categorical RAR Ban substantially burden Plaintiffs' free exercise of religion because they force Plaintiffs to "decide whether to lose [their] livelihood or violate sincerely held religious beliefs." SAC ¶ 94 (*quoting Navy SEALs 1-26*, at *9). Their non-neutral, individualized exemption policy discriminates against religious exercise and otherwise fails to satisfy RFRA. *See generally* SAC, ¶¶ 89-103 &

*supra* note 11. The most recent data available for each service, *see* Exs. 5 & 11-13 (data for Air Force, Army, Marine Corps, and Navy as of June 2022) confirms that the Air Force approves just over 1% of RARs, while the military has granted over 100 times more secular exemptions than RARs.

| Service | RARs Submitted | RARs Approved | % RAR Approved | Med/Admin Approved | Secular vs. RAR |
|---------|---------|---------|---------|---------|---------|
| Air Force | 9,139 | 109 | 1.2% | 1,608 | 14.8:1 |
| Army | 7,701 | 19 | 0.25% | 17,338 | 913:1 |
| USMC | 3,733 | 7 | 0.19% | 602 | 86:1 |
| Navy | 4,235 | 43 | 1.0% | 273 | 6.3:1 |
| **Total** | **24,808** | **178** | **0.7%** | **19,821** | **111:1** |

## B.  Plaintiffs Have Stated a Procedural Due Process Claim.

Defendants argue that Plaintiffs' "improperly plead" multiple claims in one count and that it is unclear whether Plaintiffs are "alleging a violation of procedural due process rights or … substantive due process rights or both." ECF 62 at 24 n.16 (citation omitted). No reasonable attorney could be confused. This claim addresses defects in the "process" used to deny RARs, in particular, the "lack of an impartial decisionmaker," SAC, ¶ 119, an essential element of procedural due process. *See, e.g., Robbins v. U.S. R.R. Retirement Bd.*, 586 F.2d 1034, 1035 (5th Cir. 1978). The word "substantive" does not appear in the claim; no substantive due process cases are cited; and it does not allege violation of substantive due process rights (*e.g.*, reproductive rights or bodily integrity). Defendants also claim that Plaintiffs do not challenge an "adjudicative action." ECF 62 at 25. But that is exactly what they challenge:

16

the sham RAR process that denies individualized treatment required by law.

## III.   PLAINTIFFS' STATUTORY CLAIMS

### A.   Plaintiffs Have Stated a Claim for Statutory Violations.

The Informed Consent Laws require that the labeling of all EUA products must inform recipients of their right to refuse the product. 10 U.S.C. § 1107a prohibits the mandate of an EUA product, and it requires Presidential approval to waive the foregoing labeling requirement. Yet it is undisputed that Defendants are in fact mandating EUA-labeled vaccines. SAC ¶ 125 (*citing Austin*, 2021 WL5816632, at \*5). Defendants assert that Plaintiffs challenge only two actions—the DOD Mandate, ECF 1-2 and the Air Force Mandate, ECF 1-7—and erroneously claim that none of the challenged actions "mandate the administration of [EUA] vaccines." ECF 68 at 29 (*quoting* SAC, ¶ 23). This is incorrect because (1) Plaintiffs challenge the DOD Interchangeability Directive, *see* ECF 1-11 & 52-1, which directs EUA vaccines to be mandated; and (2) the Air Force Mandate states that EUA vaccines are legally "interchangeable" with, and may be mandated "as if", they were licensed vaccines. SAC, ¶ 27 (*quoting* ECF 1-7, Air Force Mandate, ¶¶ 3.1.1, 5.3.2.1).[24]

---

[24] Defendants have previously asserted that their interchangeability directives were limited to the subset of "BLA-compliant" doses. The DOD Interchangeability Directives require all EUA vaccines to be treated as interchangeable with, or "as if" they were, FDA-licensed vaccines. There is no record evidence of such a limitation. *See* SAC, ¶¶ 129-131. Any statements that the mandate or interchangeability was limited to "BLA-compliant" vaccines must be disregarded as an irrelevant "*post hoc*

**B. APA Claims Cannot Be Dismissed without Record.**

Judicial review of agency actions under the APA "must proceed on the complete administrative record."[25] Defendants have not produced a certified record. Accordingly, this Court must defer action on the Motion until they have.

**C. Defendants Are Estopped From Taking a Contrary Position to That Reflected in *Rumsfeld III* Consent Decree.**

The D.C. District Court initially enjoined Defendant DOD's anthrax vaccine mandate in 2003 in *Rumsfeld I*, and then granted summary judgment and issued a DOD-wide permanent injunction in 2004 in *Rumsfeld II*. Subsequently, Congress enacted the EUA statute and 10 U.S.C. § 1107a, and shortly thereafter the FDA granted the anthrax vaccine the very first EUA, subject to the conditions that the DOD anthrax program had to be "revised to give personnel the option to refuse vaccination" and that refusal of an EUA vaccine could not be grounds for punishment, discipline, adverse personnel actions, separation or non-deployability. 70 Fed Reg. 5452, 5455 (Feb.2, 2005). The DOD then filed an emergency request to modify the injunction to add with these conditions, which the court approved in *Rumsfeld III*.[26]

---

rationalization" by agency counsel. SAC ¶ 130 (*quoting Harrison v. Ocean Bank*, 2011 WL 2607086, at *4 (S.D. Fla. June 30, 2011)).

[25] *Gupta v. U.S. Attorney General*, 2014 WL 12868884, at *1 (M.D. Fla. Nov. 21, 2014) (citation omitted). *Accord Vargus v. McHugh*, 87 F.Supp.3d 298, 302 (D.D.C. 2015) *Pitman v. USCIS*, 2017 WL 5991738, at *3 (D. Utah Dec. 1, 2017).

[26] The *Rumsfeld III* consent decree precludes the government from taking a contrary

The reading of 10 U.S.C. § 1107a reflected in the *Rumsfeld III* consent decree—that EUA vaccines may not be mandated, and service members may not be punished for refusal to take an EUA vaccine—was the DOD's consistent position from the time of enactment through July 2021.[27] "[E]stablished practice[s]" are not only due greater deference than unexplained reversals, but a long-standing refusal to exercise a claimed power is "significant in determining whether such a power was actually conferred." *W. Va. v. EPA*, 142 S. Ct. 2587, 2609 (2022) (citation and quotation marks omitted).

## D.     Plaintiffs Challenge Discrete, Final Agency Actions.

Plaintiffs' claims are not impermissible "Programmatic Attacks." ECF 62 at 29 (citation omitted). Plaintiffs instead challenge five final, and inter-related agency actions or "major policy decisions": the DOD and Air Force Mandates,

---

position here. Defendant DOD has already had a full and fair opportunity to litigate the identical issues, which were adjudicated on the merits (*i.e.,* the DOD lost in *Rumsfeld I* and *II*), and proceeded to a final judgment (initially a permanent injunction followed by the *Rumsfeld III* consent decree).*See generally* Tracy Bateman, *et al*, 21A Fed. Proc., L.Ed. § 51:259, Definition and Nature of Issue Preclusion; Elements (June 2022 Update); *id.*, § 51:266, Final Judgment Required for Issue Preclusion. Preclusion applies to Plaintiffs McAfee and Nykun who joined the Air Force prior to the date of the DOD-wide consent decree and were thus part of the DOD-wide class protected by the consent decree.

[27] In the July 6, 2021 Office of Legal Counsel Memorandum, the DOD indicated that it "has understood section 1107a to mean that DOD may not require service members to take an EUA product." ECF 1-23 at 16. This statutory requirement is reflected in currently effective DOD regulations. *See* Ex. 9, DODI 6200.02, § E3.4 (under the EUA statute, "potential recipients are provided an option to refuse administration," but "the President may . . . waive the option to refuse").

the DOD Interchangeability Directives, and the Categorical RAR and ME Bans.[28] Each of these agency actions are final because these actions: (1) "mark the consummation of the agency's decisionmaking process;" and (2) are actions "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 117 S.Ct. 1154 (1997) (citations and internal quotations omitted).

The requirements established by the challenged agency actions have not been "constantly changing." ECF 62 at 29 (citation omitted). These agency actions set forth Defendants' consistent policy from the issuance of the mandate through the present. Further, these agency actions establish a legally binding mandate and severe legal consequences for non-compliance. Plaintiffs have already faced severe consequences, *see* SAC, ¶¶81-87, and but for the *Doster* injunction, almost certainly would have already been further disciplined, discharged, and/or lost retirement benefits and damage to future employability due to discharge characterization.

---

[28] Defendants assert that Plaintiffs challenge only two actions—the DOD Mandate, ECF 1-2 and the Air Force Mandate, ECF 1-7—and erroneously claim that none of the challenged actions "mandate the administration of [EUA] vaccines." ECF 68 at 29 (*quoting* SAC, ¶ 23). This is incorrect because (1) Plaintiffs challenge the DOD Interchangeability Directive, which is the authority for the DOD Mandate of EUA vaccines; and (2) the Air Force Mandate states that EUA vaccines are "interchangeable" and may be mandated as if they were licensed vaccine. SAC, ¶ 27 (*quoting* ECF 1-7, Air Force Mandate, ¶¶ 3.1.1, 5.3.2.1)·.

## IV.   CONCLUSION

This Court should deny Defendants' Motion to Dismiss.

Dated: August 25, 2022                    Respectfully Submitted,

/s/ Brandon Johnson
Brandon Johnson, DC Bar No. 491370
/s/ Travis Miller
Travis Miller, Texas Bar No. 24072952
Defending the Republic
2911 Turtle Creek Blvd., Suite 300
Tel. (214) 707-1775
Email: bcj@defendingtherepublic.org
Email: twm@defendingtherepublic.org

## CERTIFICATE OF SERVICE

This is to certify that I have on this day e-filed the foregoing Plaintiffs'

Opposition to Defendants' Motion to Dismiss using the CM/ECF system.

Dated: August 25, 2022                    Respectfully Submitted,

*/s/ Brandon Johnson*
Brandon Johnson