## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

ERIN DAVIS, et al.,

        Plaintiffs,

vs.                                                                Case No.  3:22-cv-237-MMH-MCR

LLOYD AUSTIN, III, in his official
capacity as Secretary of Defense,
and FRANK KENDALL, in his
official capacity as Secretary of the
Air Force,

        Defendants.

_____/

## O R D E R

**THIS CAUSE** is before the Court on Defendants' Memorandum Addressing Mootness (Doc. 71; Defendants' Brief), filed March 24, 2023, and Plaintiffs' Brief Opposing Dismissal for Mootness (Doc. 73; Plaintiffs' Brief), filed April 21, 2023.  On January 25, 2023, the Court, sua sponte, questioned whether this case is moot in light of factual developments.  See Order (Doc. 68; Order of Jan. 25, 2023).  The Court directed the parties to confer as to whether the case is moot and to file briefs addressing the issue if the parties disagreed. See id. at 2.  In response to the Court's order, Defendants Lloyd Austin, III, in his official capacity as Secretary of Defense, and Frank Kendall, in his official capacity as Secretary of the Air Force, filed Defendants' Brief.  Plaintiffs Erin

Davis, Torrey Hamilton, Joseph Mazure, John McAfee, Tammara Nykun, and Kyle Singletary responded with Plaintiffs' Brief.  Accordingly, this matter is ripe for review.

## I.   Background[1]

This case arises from Secretary Austin's August 24, 2021 mandate that all members of the armed forces be vaccinated against COVID-19 (the Vaccine Mandate).  See Pentagon Memorandum Dated Aug. 24, 2021 (Doc. 1-2) at 2. Secretary Austin allowed the service branches to grant individual service members exemptions from the Vaccine Mandate.  See id.  As relevant in this case, the Air Force permitted service members seeking exemptions from the Vaccine Mandate based upon religious beliefs to file religious accommodation requests (RAR(s)).  See COVID-19 Mandatory Vaccination Implementation Guidance for Service Members (Doc. 1-7) at 19–21.

Nineteen service members from several branches of the military initiated this action on March 2, 2022, by filing their Complaint for Declaratory and Injunctive Relief (Doc. 1).  The service members challenged the Vaccine Mandate on several grounds.  See generally id.  On May 24, 2022, the Court

---

[1]  The Court's citations to page numbers in documents in the record refer to the CM-ECF-stamped page numbers located at the top of each page, rather than a document's internal page numbers, if any.

severed the claims of the original plaintiffs into separate actions against each military service. See Order (Doc. 51) at 41–42.

The six Plaintiffs remaining in this action are current or former members of the Air Force or the Space Force.[2] See Air Force Plaintiffs' Second Amended Complaint (Doc. 57; Complaint) ¶¶ 1, 10–15. In their operative Complaint, Plaintiffs reassert their claims against Secretary Austin and Secretary Kendall, in their official capacities. See id. ¶¶ 1, 16–17. Specifically, Plaintiffs allege that Defendants are using the threat of disciplinary action to coerce Plaintiffs into receiving a vaccine that violates their religious beliefs. See id. ¶¶ 1, 3, 77–87. Plaintiffs assert that Defendants "have mandated that all members of the Air Force receive a COVID-19 vaccine or be involuntarily separated" and that RARs "are universally denied unless the requester is already imminently leaving the Air Force." Id. ¶ 2. Each Plaintiff submitted an RAR that the Air Force denied. Id. ¶ 3. According to Plaintiffs, Defendants' RAR process merely "rubber stamped" the denials of their RARs. Id. ¶ 68.

In Count I, Plaintiffs allege that the Vaccine Mandate and the policy of systematically denying all RARs violate the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb, et seq. See Complaint ¶¶ 88–104. In Count II,

_____

[2] While recognizing that the Space Force is an independent branch of the military, the Court kept the Space Force together with the Air Force in this action because the Department of the Air Force, led by Secretary Kendall, prescribed the same Vaccine Mandate and the same RAR process for both branches. See Declaration of Chaplain, Major Matthew J. Streett (Doc. 31-8) at 2–3.

Plaintiffs assert that the Vaccine Mandate and the systematic denial of all RARs violate the Free Exercise Clause of the First Amendment to the U.S. Constitution. See id. ¶¶ 105–14. In Count III, Plaintiffs allege that the Vaccine Mandate and the systematic denial of all RARs violate the Due Process Clause of the Fifth Amendment. See id. ¶¶ 115–21. In Count IV, Plaintiffs bring an Administrative Procedure Act (APA) claim, asserting that Defendants have mandated that service members receive vaccines with an emergency use authorization (EUA) in violation of informed consent laws. See id. ¶¶ 122–32. In Count V, Plaintiffs allege that the Vaccine Mandate is arbitrary and capricious in violation of the APA. Id. ¶¶ 133–40. And in Count VI, Plaintiffs assert that the Vaccine Mandate is an ultra vires action that entitles Plaintiffs to declaratory and injunctive relief under the Court's inherent equity powers. Id. ¶¶ 141–45.

Plaintiffs seek "declaratory relief and injunctive relief consistent with that granted in this District in Navy Seal 1 v. Austin, No. 8:21-cv-2429-SDM-TGW." Complaint ¶ 7. Specifically, Plaintiffs ask the Court to grant the following relief:

> (1) Declare the DoD Mandate[,] the Air Force Mandate[,] and implementing orders to be unlawful, ultra vires actions, and to vacate these orders to the extent that these orders mandate administration of an unlicensed EUA vaccine;

(2) Enjoin the implementation or enforcement of the DOD Mandate and the Air Force Mandate by the Defendants with respect to the Plaintiffs;

(3) Declare that the Defendants' No Accommodation Policy violates services [sic] members' rights under RFRA, the First Amendment Free Exercise Clause, and the Fifth Amendment Due Process Clause, and that Defendants' religious exemption processes fails [sic] to satisfy strict scrutiny; and

(4) Enjoin any adverse or retaliatory action against the Plaintiffs as a result of, arising from, or in conjunction with the Plaintiffs' RAR requests or denials, or for pursuing this action, or any other action for relief from Defendants' constitutional, statutory, or regulatory violations.

Id. Plaintiffs also ask the Court to "[a]ward plaintiffs' costs and attorneys' fees and any other relief this Court may find appropriate." Id. at 61 (Relief Requested).

On July 21, 2022, Defendants moved to dismiss the Complaint pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (Rule(s)). See Motion to Dismiss (Doc. 62; Motion to Dismiss). Plaintiffs opposed the motion. See Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss (Doc. 65), filed August 25, 2022.

On January 24, 2023, Defendants filed a Notice of Supplemental Authority (Doc. 66), informing the Court that Secretary Austin had rescinded the Vaccine Mandate in accordance with the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 (NDAA), Pub. L. No. 117-263, § 525, 136 Stat. 2395, 2571–72 (2022). After reviewing Defendants' notice, the Court

questioned whether the NDAA and Secretary Austin's rescission of the Vaccine Mandate rendered this case moot. See Order of Jan. 25, 2023. The Court also deferred ruling on the Motion to Dismiss pending the resolution of the mootness inquiry. See id. at 3. In response to the Court's order, the parties filed their briefing addressing mootness. See Defendants' Brief; Plaintiffs' Brief. The parties also have filed notices of supplemental authority. See Notice of Supplemental Authority (Doc. 72), filed April 4, 2023; Plaintiffs' Notice of Supplemental Authority (Doc. 74), filed June 14, 2023; Notice of Supplemental Authority (Doc. 75), filed June 20, 2023; Notice of Supplemental Authority (Doc. 76), filed June 29, 2023.

With their brief, Defendants submitted six exhibits showing how the military has responded to the NDAA's passage. On January 10, 2023, Secretary Austin issued a memorandum rescinding the Vaccine Mandate. See Defendants' Brief, Ex. 1 (Doc. 71-2; Rescission Memorandum). In his Rescission Memorandum, Secretary Austin ordered,

> No individuals currently serving in the Armed Forces shall be separated solely on the basis of their refusal to receive the COVID-19 vaccination if they sought an accommodation on religious, administrative, or medical grounds. The Military Departments will update the records of such individuals to remove any adverse actions solely associated with denials of such requests, including letters of reprimand. The Secretaries of the Military Departments will further cease any ongoing reviews of current Service member religious, administrative, or medical accommodation requests solely for exemption from the COVID-19 vaccine or appeals of denials of such requests.

Id. at 2.  Secretary Austin noted that "[f]ormer Service members may petition their Military Department's Discharge Review Boards and Boards for Correction of Military or Naval Records to individually request a correction to their personnel records, including records regarding the characterization of their discharge." Id. at 3.  Secretary Austin clarified that other DOD policies regarding immunizations "remain in effect," including "the ability of commanders to consider, as appropriate, the individual immunization status of personnel in making deployment, assignment, and other operational decisions, including when vaccination is required for travel to, or entry into, a foreign nation." Id.  Finally, Secretary Austin directed that the Under Secretary of Defense for Personnel and Readiness issue additional guidance when appropriate.  Id.  On January 23, 2023, Secretary Kendall implemented the Rescission Memorandum by rescinding the Air Force's previous adoption of the Vaccine Mandate.  See Defendants' Brief, Ex. 2 (Doc. 71-3) at 2.

A week later on January 30, 2023, Gilbert R. Cisneros, Jr., Under Secretary of Defense for Personnel and Readiness, issued additional guidance on the Department of Defense's COVID-19 policies.  See Defendants' Brief, Ex. 3 (Doc. 71-4; Under Secretary's Memorandum).  Specifically, Under Secretary Cisneros issued amendments to the Consolidated Department of Defense – Coronavirus Disease 2019 Force Health Protection Guidance.  Id. at 2.  Among

other changes, these amendments ended testing based on vaccination status, removed the requirements to ask about vaccination status, and removed travel restrictions based on vaccination status.  Id. at 2, 7, 19–20.

The Deputy Secretary of Defense provided further guidance on February 24, 2023.   See Defendants' Brief, Ex. 4 (Doc. 71-5; Deputy Secretary's Memorandum).   The Deputy Secretary clarified that the Rescission Memorandum had rendered no longer in effect "any COVID-19 vaccination requirements or related theater entry requirements and any limitations on deployability of Service members who are not vaccinated against COVID-19." Id. at 2.  The Deputy Secretary directed Department of Defense component heads to formally rescind any such policies by March 17, 2023.  Id.  According to the Deputy Secretary, "commanders will not require a Service member or group of Service members to be vaccinated against COVID-19, nor consider a Service member's COVID-19 immunization status in making deployment, assignment, and other operational decisions," unless a foreign nation requires vaccination for entry into the country or the Assistant Secretary of Defense for Health Affairs approves a request for a new vaccination requirement.  Id. at 2– 3.  The Deputy Secretary expressed the expectation that any commander's request for a vaccination requirement "will be made judiciously and only when justified by compelling operational needs and will be as narrowly tailored as possible."  Id. at 3.

Also on February 24, 2023, Secretary Kendall issued orders about removing adverse actions affecting airmen who remained unvaccinated. <u>See</u> Defendants' Brief, Ex. 5 (Doc. 71-6; Air Force's Guidance Memorandum). Secretary Kendall directed that, if a service member had adverse information in his or her personnel records, had sought an exemption from the Vaccine Mandate before or concurrent with the adverse action, and had received the adverse action solely because of his or her refusal to receive the COVID-19 vaccine, the Air Force must remove the adverse information from the records. <u>Id.</u> at 2. The Secretary also instructed that, if administrative action, nonjudicial punishments, or referral performance reports addressed additional misconduct, the information about the service member's refusal to receive the COVID-19 vaccine "will be redacted" or "set aside" and commanders or other appropriate personnel will "make new determinations" or otherwise reassess the appropriateness of the actions, punishments, or referrals. <u>Id.</u> at 3.

Defendants also filed a declaration from Technical Sergeant Joshua Emer. <u>See</u> Defendants' Brief, Ex. 6 (Doc. 71-7; Emer Decl.). Technical Sergeant Emer affirms that none of the Plaintiffs have adverse actions in their personnel records for refusing to receive the COVID-19 vaccine. <u>Id.</u> at 2. Lieutenant Colonel McAfee, Lieutenant Colonel Hamilton, Major Nykun, and Captain Davis never received an adverse action. <u>Id.</u> at 2–3. Captain Singletary received a letter of counseling, but this letter was removed after he became fully

vaccinated.  Id. at 3.  Technical Sergeant Mazure received a letter of reprimand that was removed after the Air Force's Guidance Memorandum was published. Id.  Technical Sergeant Emer also explains that Plaintiffs' "current duties as well as assignment, training, and deployment eligibility are not limited by their vaccination status."  Id.

Plaintiffs submitted one exhibit, which is the transcript of a February 28, 2023 hearing in the House Armed Services Committee.  See Plaintiffs' Brief, Ex. 1 (Doc. 73-1; House Testimony).  At the hearing, Under Secretary Cisneros testified that the Department of Defense was still considering what action to take with regard to service members who refused to receive the vaccine and who did not submit an exemption or accommodation request.  Id. at 3.

With the benefit of the parties' briefing and other filings, the Court considers whether this case is moot.

## II.    Applicable Law

Federal courts are courts of limited jurisdiction and therefore have an obligation to inquire into their subject matter jurisdiction.  See Kirkland v. Midland Mortg. Co., 243 F.3d 1277, 1279–80 (11th Cir. 2001).  This obligation exists regardless of whether the parties have challenged the existence of subject matter jurisdiction.  See Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999) ("[I]t is well settled that a federal court is obligated to inquire into subject matter jurisdiction sua sponte whenever it may be lacking.").

"Among other limitations, the federal courts' jurisdiction is circumscribed by Article III [of the Constitution]'s case or controversy requirement." <u>Kelly v. Harris</u>, 331 F.3d 817, 819 (11th Cir. 2003) (citations omitted). "Mootness is among the important limitations placed on the power of the federal judiciary and serves long-established notions about the role of unelected courts in our democratic system." <u>Nat'l Advert. Co. v. City of Miami</u>, 402 F.3d 1329, 1332 (11th Cir. 2005). As a result, the Court lacks subject matter jurisdiction over moot claims, as any opinion rendered on such a claim would be an impermissible advisory opinion. <u>See</u> <u>id.</u> (citations omitted). The existence of developments in a case subsequent to the initiation of the lawsuit can render an action moot. <u>See</u> <u>Graham v. Butterworth</u>, 5 F.3d 496, 499 (11th Cir. 1993); <u>see also</u> <u>Nat'l Advert.</u>, 402 F.3d at 1332. In determining whether a case is moot, the Court must "look at the events at the present time, not at the time the complaint was filed." <u>Health Freedom Def. Fund v. President of United States</u>, --- F.4th ---, No. 22-11287, 2023 WL 4115990, at *2 (11th Cir. June 22, 2023) (quoting <u>Djadju v. Vega</u>, 32 F.4th 1102, 1106 (11th Cir. 2022)). Indeed, the Eleventh Circuit Court of Appeals has recognized that a case becomes "moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." <u>Graham</u>, 5 F.3d at 499 (quoting <u>Powell v. McCormack</u>, 395 U.S. 486, 496 (1969)). "Put another way, '[a] case is moot when it no longer presents a live controversy with respect to which the court

can give meaningful relief.'" Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs., 225 F.3d 1208, 1217 (11th Cir. 2000) (citations omitted); see also Health Freedom Def. Fund, 2023 WL 4115990, at *2 ("Probabilities aside, the basic question is whether events have occurred that deprive this court of the ability to provide meaningful relief."). Given this legal standard, "[r]arely will challenges to a law's validity survive a mootness analysis when that law is no longer effective." Health Freedom Def. Fund, 2023 WL 4115990, at *2.

Jurisdiction may be attacked facially or factually. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003). In a facial challenge, a court assumes the allegations in the complaint are true and determines whether the complaint sufficiently alleges a basis for subject matter jurisdiction. Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990). On the other hand, factual attacks "challenge the 'existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" Id. (citation omitted). In considering a factual attack on subject matter jurisdiction, the Court is free to weigh the facts and is not constrained to view them in the light most favorable to the plaintiff. Carmichael v. Kellogg, Brown & Root Servs., Inc., 572 F.3d 1271, 1279 (11th Cir. 2009). However, the Eleventh Circuit has cautioned that, if a jurisdictional challenge implicates the merits of the underlying claim, the

district court should "find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." Morrison, 323 F.3d at 925 (quoting Garcia v. Copenhaver, Bell & Assocs., 104 F.3d 1256, 1261 (11th Cir. 1997)).

## III.   Discussion

Having reviewed the record, the parties' briefing, and the applicable law, the Court finds that this case is moot.  In their Complaint, Plaintiffs challenge the validity of the Vaccine Mandate and the denial of all RARs.  From the Court, Plaintiffs seek prospective declaratory and injunctive relief only.  See Complaint ¶ 7.  But the Vaccine Mandate and the RAR process for requesting exemptions from that mandate no longer exist.  See Rescission Memorandum at 2.  As such, the Vaccine Mandate and the alleged policy of denying all RARs no longer apply to Plaintiffs.  Because the allegedly illegal conduct has ceased, the Court can no longer award the prospective declaratory and injunctive relief requested by Plaintiffs.  See Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985) (per curiam) ("Past exposure to illegal conduct does not constitute a present case or controversy involving injunctive relief if unaccompanied by any continuing, present adverse effects."); Gagliardi v. TJCV Land Tr., 889 F.3d 728, 734–35 (11th Cir. 2018) ("An otherwise nonjusticiable case cannot be resurrected simply by seeking declaratory relief.").  The Court can no longer "[d]eclare the DoD Mandate . . . and implementing orders to be unlawful,"

"vacate these orders," "[e]njoin the implementation or enforcement" of the mandate, or "[d]eclare that the Defendants' No Accommodation Policy" is unlawful because the Vaccine Mandate, implementing orders, and RAR policy no longer exist.  Complaint ¶ 7.  Neither can the Court "[e]njoin any adverse or retaliatory action against the Plaintiffs as a result of, arising from, or in conjunction with the Plaintiffs' RAR requests or denials, or for pursuing this action" because Plaintiffs no longer face adverse actions for refusing to receive the vaccine.  Id.  Plaintiffs have no adverse information in their personnel files related to their refusal to receive the COVID-19 vaccine.  See Emer Decl. at 2.  Plaintiffs do not face separation proceedings for refusing to get vaccinated.  See Rescission Memorandum at 2. And Defendants are not restricting Plaintiffs' duties, assignments, training, or deployment eligibility based on their vaccination status.  See Emer Decl. at 2–3.

In their Complaint, Plaintiffs do not request any further relief that the Court could give.  Thus, any opinion this Court might issue about the legality of the Vaccine Mandate and the RAR process would be nothing more than an impermissible advisory opinion.  Because the Court can no longer grant meaningful relief, the case is moot.  See Fla. Ass'n of Rehab. Facilities, 225 F.3d at 1217.  Indeed, several courts faced with similar cases have determined that challenges to the Vaccine Mandate and RAR process have become moot.  See Roth v. Austin, 62 F.4th 1114, 1118–19 (8th Cir. 2023); Navy Seal 1 v. Austin,

No. 22-5114, 2023 WL 2482927, at *1 (D.C. Cir. Mar. 10, 2023) (per curiam); Dunn v. Austin, No. 22-15286, 2023 WL 2319316, at *1 (9th Cir. Feb. 27, 2023); Short v. Berger, No. 22-15755, 2023 WL 2258384, at *1 (9th Cir. Feb. 24, 2023); Bazzrea v. Mayorkas, No. 3:22-CV-265, 2023 WL 3958912, at *1 (S.D. Tex. June 12, 2023); Clements v. Austin, No. CV 2:22-2069-RMG, 2023 WL 3479466, at *4 (D.S.C. May 16, 2023); Colonel Fin. Mgmt. Officer v. Austin, No. 8:22-cv-1275-SDM-TGW, 2023 WL 2764767, at *2 (M.D. Fla. Apr. 3, 2023); Colonel Fin. Mgmt. Officer v. Austin, No. 8:22-cv-1275-SDM-TGW (slip op. at 2–3) (M.D. Fla. May 17, 2023) (Doc. 295).[3]  Because this case is moot, it is due to be dismissed for lack of subject matter jurisdiction.

Although Plaintiffs present several arguments to avoid this result, none are persuasive.

## A.    Claim for Damages

Plaintiffs first argue that the case is not moot because the Court may still award damages for the alleged violations of RFRA.[4]  See Plaintiffs' Brief at 3–4

---

[3] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

[4] Plaintiffs also mention their claim for attorney's fees. See Plaintiffs' Brief at 10.  But "[t]his interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim."  Lewis v. Cont'l Bank Corp., 494 U.S. 472, 480–81 (1990); Veterans Contracting Grp., Inc. v. United States, 743 F. App'x 439, 441 (Fed. Cir. 2018).

(citing <u>Tanzin v. Tanvir</u>, 141 S. Ct. 486 (2020)).  This argument is unavailing because Plaintiffs do not assert a claim for damages in their Complaint.  <u>See</u> Complaint ¶¶ 7, 19, 104, 114, 121, 132 (requesting declaratory and injunctive relief).  In the context of Plaintiffs' other prayers for relief, the Court cannot construe the general request for "any other relief this Court may find appropriate" as a request for money damages.[5]  <u>See</u> <u>Wahl</u>, 773 F.2d at 1172 n.2. In a similar vein, Plaintiffs argue that this Court can grant declaratory relief that could serve as a precursor to monetary relief for backpay in the United States Court of Federal Claims.  <u>See</u> Plaintiffs' Brief at 10–11.  But, in the operative Complaint, Plaintiffs never seek a declaration that they are entitled to backpay or any monetary benefits.  Moreover, Plaintiffs may not avoid the jurisdictional limits of the Tucker Act through artful pleading.  <u>See</u> <u>Friedman v. United States</u>, 391 F.3d 1313, 1315 (11th Cir. 2004) (per curiam); <u>McCarthy v. Del Toro</u>, No. 3:18-cv-1213-MMH-LLL, 2023 WL 2305613, at *5–6, *5 n.6 (M.D. Fla. Mar. 1, 2023).  If Plaintiffs want an award of backpay from the Court of Federal Claims, they must seek it from that court.  Therefore, Plaintiffs' belated claims for monetary relief do not save this case from being moot.

---

[5]  In addition, Plaintiffs' alleged claim for damages would not be a cognizable claim for relief.  In <u>Tanzin</u>, the Supreme Court held that RFRA permits claims for damages against government officials "in their <u>individual capacities</u>." 141 S. Ct. at 489 (emphasis added). Here, Plaintiffs sue Defendants in their official capacities only.  <u>See</u> Complaint ¶¶ 1, 16–17.  Because Congress has not unequivocally waived its sovereign immunity for suits of this type, the Eleventh Circuit has held that "RFRA does not . . . authorize suits for money damages against officers in their official capacities."  <u>Davila v. Gladden</u>, 777 F.3d 1198, 1210 (11th Cir. 2015).

### B.     Continuing Harm

Next, Plaintiffs contend that the case is not moot because they face ongoing harm from a de facto vaccination mandate, threats of retaliation, and the Navy's failure to take corrective actions.   See Plaintiffs' Brief at 4–9. Plaintiffs assert that broad language in the Rescission Memorandum permits commanders to continue to discriminate against those who refused to receive the vaccine.   See id. at 4–5.   Plaintiffs suggest that the Air Force may consider vaccination status in conjunction with any other factor when deciding whether to separate an airman.   See id. at 4 n.2.   According to Plaintiffs, the Deputy Secretary's Memorandum providing further guidance does not eliminate the "de facto mandate" because the Air Force has not implemented that memorandum and because it conflicts with the Rescission Memorandum.   See id. at 6. Plaintiffs also argue that the same discriminatory policies will apply to any future RARs.   See id. at 6–7.

Plaintiffs' arguments are unavailing.   Plaintiffs challenge the Vaccine Mandate, which required all service members to be vaccinated against COVID-19.   That mandate no longer exists.   Other policies that give commanders discretion to consider the circumstances facing their commands and to issue appropriate directions still exist.   See Rescission Memorandum at 3.   But Plaintiffs do not oppose those policies in their Complaint.   See Regalado v. Dir., Ctr. for Disease Control, No. 22-12265, 2023 WL 239989, at *1 (11th Cir. Jan.

18, 2023) (per curiam) ("Regalado's shift to rely on the CMS mandate does not salvage this jurisdictional requirement because claims about the CMS mandate were never properly before the district court as he only raised them in opposition to the motion to dismiss and did not seek leave to amend his complaint.").[6]  In addition, Plaintiffs have not shown that any command has used, or may reasonably be expected to use, this continued discretion to reimpose a vaccination mandate or to retaliate against those who refused the vaccine for religious reasons.  The Deputy Secretary clarified that "commanders will not require a Service member or group of Service members to be vaccinated against COVID-19, nor consider a Service member's COVID-19 immunization status in making deployment, assignment, and other operational decisions," unless a foreign nation requires vaccination for entry into the country or the Assistant Secretary of Defense for Health Affairs approves a request for a new vaccination requirement.  Deputy Secretary's Memorandum at 2–3.

Plaintiffs have not shown that the Air Force is failing to implement the Deputy Secretary's guidance.  Plaintiffs assert that the Air Force's Guidance Memorandum of February 24, 2023, "does not expressly implement" the Deputy Secretary's Memorandum "or otherwise prohibit Air Force commanders from

---

[6] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point.  See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

taking vaccination status into account." Plaintiffs' Brief at 6. However, the Air Force's Guidance Memorandum addressed a different issue from the Deputy Secretary's Memorandum and, thus, is not evidence that the Air Force has ignored a clear directive from the Secretary of Defense's designee. See generally Air Force's Guidance Memorandum. Plaintiffs also provide no support for their argument that the Deputy Secretary's Memorandum conflicts with the Rescission Memorandum such that the "Secretary's directive controls." Plaintiffs' Brief at 6. That quotation does not appear in the source Plaintiffs cite. Moreover, the two documents do not conflict. The Deputy Secretary's Memorandum simply provides clarification about the scope of commanders' ability to consider immunization. See Deputy Secretary's Memorandum at 2–3.

Plaintiffs contend that they face credible threats of separation and prosecution. See Plaintiffs' Brief at 8–9. In support, Plaintiffs cite Under Secretary Cisneros's testimony before the House Armed Services Committee. See id. There, Under Secretary Cisneros testified that the Department of Defense was still considering what action to take with regard to service members who refused to receive the vaccine and who did not submit an exemption or accommodation request. House Testimony at 3. But all Plaintiffs in this case submitted accommodation requests. See Complaint ¶ 3. Therefore, this testimony does not show that Plaintiffs face a risk of discharge or

prosecution for refusing to receive the vaccine. Cf. Abbott v. Biden, --- F.4th ---, No. 22-40399, 2023 WL 3945847, at *4 (5th Cir. June 12, 2023) (finding that an appeal regarding the Vaccine Mandate was not moot with regard to National Guardsmen who "remain unvaccinated, never sought an accommodation while the mandate was in effect, and hence remain under Secretary Austin's Damoclean sword" (emphasis added)). Plaintiffs also have not supported their suggestion that the Air Force may consider vaccination in conjunction with other factors when deciding to separate service members. See Plaintiffs' Brief at 4 n.2. In contrast, the evidence in the record shows that the Air Force is affirmatively excising mentions of vaccination refusal from personnel records and is requiring new evaluations based only on other grounds. See Air Force's Guidance Memorandum at 2–3. Thus, Plaintiffs' concern that commands across the Air Force will continue to enforce a de facto mandate is wholly speculative.

Plaintiffs argue that Defendants have not taken "corrective actions to restore Plaintiffs to the position in which they would have been absent the unlawful mandates." Plaintiffs' Brief at 7. But the Air Force has removed adverse actions from Plaintiffs' personnel files, and Plaintiffs' duties, assignments, training, and deployment eligibility are not limited by their vaccination status. See Emer Decl. at 2–3. Plaintiffs do not identify any further corrective action that this Court could order to be taken.

Plaintiffs next contend that the case is not moot because the same policies and procedures for evaluating RARs remain in place. <u>See</u> Plaintiffs' Brief at 6–7. But in the Complaint, Plaintiffs do not challenge the RAR process as a whole or assert that the RAR process is defective with regard to other requests for accommodations. Plaintiffs oppose the alleged policy of denying all RARs that sought an exemption from the Vaccine Mandate. <u>See</u> Complaint ¶¶ 2, 68. Because the Vaccine Mandate no longer exists, there can be no policy of denying all RARs to enforce that mandate.

Defendants have produced evidence to show that the Vaccine Mandate and the accompanying RAR policy no longer exist. Plaintiffs have not rebutted Defendants' showing in any way. Plaintiffs presumably would know if they were continuing to experience adverse actions. Yet they have submitted no declarations or other evidence demonstrating that they continue to suffer concrete harm that the Court could redress. Plaintiffs' fears of a reimposed mandate or retaliation are far too speculative to constitute a concrete or tangible injury that is capable of redress by this Court. <u>See</u> <u>Gagliardi</u>, 889 F.3d at 735 ("Here there is nothing but the fear that the challenged conduct may recur in some unstated form at an unknown time and place. We do not have the power to 'advise' potential parties about the lawfulness of potential actions that have not and may never occur."); <u>see also</u> <u>B & B Chem. Co. v. U.S. E.P.A.</u>, 806 F.2d 987, 991 (11th Cir. 1986) ("The occurrence of future actions brought by the

EPA alleging claims resulting directly from the district court's order is one that is too speculative at this stage to preclude a finding of mootness. From a policy standpoint, we would be opening the floodgates of litigation by allowing this exception to eclipse a finding of mootness on the basis of a purely speculative event."). Thus, the Court concludes that the challenged policies are not continuing and that there is no "de facto mandate" still in place.

### C. Voluntary Cessation

Plaintiffs argue that the case is not moot under the voluntary cessation doctrine. Plaintiffs' Brief at 11. As an initial matter, the Court finds that the voluntary cessation doctrine does not apply to these circumstances because the named Defendants did not voluntarily change their policy. Rather, Congress and the President enacted a law that ordered Defendants to change their policy. See Am. Bar Ass'n v. F.T.C., 636 F.3d 641, 648 (D.C. Cir. 2011) ("The FTC's abandonment of the Extended Enforcement Policy was not voluntary. The agency most assuredly did not alter its definition of 'creditor' in order to avoid litigation. Rather, intervening legislation simply nullified the FTC's policy statement . . . . This scenario is not within the compass of the voluntary cessation exception to mootness."); J.T. v. District of Columbia, 983 F.3d 516, 523 (D.C. Cir. 2020) ("We have held that '[t]he voluntary-cessation doctrine has no apparent relevance' where the 'source of "cessation" . . . lies beyond the unilateral legal authority of any of the named defendants.'" (alterations in

original) (quoting <u>Guedes v. ATF</u>, 920 F.3d 1, 15 (D.C. Cir. 2019) (per curiam)));

<u>see also</u> <u>Colonel Fin. Mgmt. Officer</u>, 2023 WL 2764767, at *2 ("Unlike a typical

instance of voluntary cessation, the Secretary of Defense's rescission of the

COVID-19 vaccination mandate results not from the Secretary's unilateral

decision but from a higher authority, Congress . . . .").

Even under the framework of the voluntary cessation doctrine, the Court

finds that the case is moot.  Generally, "the party asserting mootness carries

the 'heavy burden' of demonstrating to the court 'that the challenged conduct

cannot reasonably be expected to start up again.'"  <u>Health Freedom Def. Fund</u>,

2023 WL 4115990, at *2 (quoting <u>Friends of the Earth, Inc. v. Laidlaw Env't</u>

<u>Servs. (TOC), Inc.</u>, 528 U.S. 167, 189 (2000)).   But the Eleventh Circuit

recognizes that government officials have "considerably more leeway than

private parties in the presumption that they are unlikely to resume illegal

activities."  <u>Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs</u>, 868 F.3d

1248, 1256 (11th Cir. 2017) (en banc) (quoting <u>Coral Springs St. Sys., Inc. v.</u>

<u>City of Sunrise</u>, 371 F.3d 1320, 1328–29 (11th Cir. 2004)), <u>abrogated on other</u>

<u>grounds by</u> <u>Uzuegbunam v. Preczewski</u>, 141 S. Ct. 792 (2021).   Once a

challenged statute has been fully repealed or a policy has been unambiguously

terminated, the plaintiff "bears the burden of presenting affirmative evidence

that its challenge is no longer moot."   <u>Id.</u> (quoting <u>Nat'l Advert.</u>, 402 F.3d at

1334.  In light of the deference afforded to governmental actions, "a plaintiff

disputing a finding of mootness must present more than '[m]ere speculation that the [government] may return to its previous ways.'" Id. (first alteration in original) (quoting Nat'l Advert., 402 F.3d at 1334).  The plaintiff must show that the evidence leads to a "reasonable expectation that the [government] will reverse course and reenact the allegedly offensive" policy if the court dismisses the case.  Id.; see also Health Freedom Def. Fund, 2023 WL 4115990, at *2 ("When dealing with government defendants, we have held that challenges to laws that have been 'unambiguously' terminated are moot unless there is a 'reasonable basis to believe that the policy will be reinstated if the suit is terminated.'" (quoting Keister v. Bell, 29 F.4th 1239, 1250 (11th Cir. 2022)).

Here, Plaintiffs have not shown that there is a reasonable expectation that Defendants will reimpose the Vaccine Mandate.  Defendants' change in policy does not appear to be an attempt to manipulate the Court's jurisdiction. Instead, the change resulted from the normal legislative process, which involves substantial deliberation and compromise.  In addition, Defendants have unambiguously terminated the Vaccine Mandate in compliance with the NDAA. While Defendants may have the authority to impose a similar mandate in the future, "the mere power and authority to reenact is plainly an insufficient reason, standing alone, to raise a reasonable expectation that [Defendants] would do so." Flanigan's Enters., 868 F.3d at 1257 n.4.  Finally, the Court notes that Defendants have gone above and beyond Congress's mandate and have

consistently applied, implemented, and extended the new policy by removing adverse actions from service members' personnel files.  All of these factors point toward the conclusion that there is no reasonable expectation that Defendants will reenact the Vaccine Mandate and accompanying RAR policy.  See id. at 1257, 1260–62.

Contrary to Plaintiffs' arguments, this is not a situation where Defendants have enacted several different, constantly changing policies and retain the authority to change the requirements at any time.  See Tandon v. Newsom, 141 S. Ct. 1294, 1297 (2021) (per curiam).  Here, Defendants had one policy requiring vaccination.  When Congress ordered Defendants to end that policy, they did.  And the fact "that the government continues to defend the legality of the Mandate . . . 'has little, if anything to do . . . with the voluntary-cessation analysis.'"  Health Freedom Def. Fund, 2023 WL 4115990, at *3 (second alteration in original) (quoting Keohane v. Fla. Dep't of Corr. Sec'y, 952 F.3d 1257, 1269 (11th Cir. 2020)).  In the absence of compelling evidence, the Court will not presume that there is a reasonable expectation Defendants will ignore the will of Congress and reimpose a COVID-19 vaccination mandate.  For these reasons, the voluntary cessation doctrine does not prevent dismissal based on mootness.

### D.    Capable of Repetition yet Evading Review

Plaintiffs also argue that the case is not moot because this controversy is capable of repetition but evades review. <u>See</u> Plaintiffs' Brief at 11–12. If the action being challenged is capable of being repeated and evading review, then the action is not moot. <u>Al Najjar v. Ashcroft</u>, 273 F.3d 1330, 1336 (11th Cir. 2001). However, "this narrow exception applies only where '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" <u>Health Freedom Def. Fund</u>, 2023 WL 4115990, at *3 (quoting <u>Arcia v. Fla. Sec'y of State</u>, 772 F.3d 1335, 1343 (11th Cir. 2014)). Although the phrase "capable of repetition" may sound expansive, the "exception requires a 'reasonable expectation' or a 'demonstrated probability' that 'the same controversy will recur.'" <u>Id.</u> (quoting <u>Fed. Election Comm'n v. Wisc. Right to Life, Inc.</u>, 551 U.S. 449, 463 (2007)). Moreover, "future recurrences must involve substantially the same parties." <u>Id.</u> (quoting <u>Bourgeois v. Peters</u>, 387 F.3d 1303, 1309 (11th Cir. 2004)).

Here, the exception does not apply. As discussed above, Plaintiffs have not shown that there is a reasonable expectation that the same controversy will recur. Defendants have not already enacted a <u>de</u> <u>facto</u> mandate. And Defendants are unlikely to reimpose a vaccination mandate in apparent contravention of the law passed by Congress. Moreover, while possible, it

hardly seems reasonable to expect that a similar global pandemic will occur, that Defendants will impose a vaccination mandate without meaningful religious accommodations, that the mandatory vaccine will conflict with the religious beliefs of these Plaintiffs, and that Plaintiffs will still be in the Air Force. See id. at *4 (holding in the context of a government policy enacted in response to the COVID-19 pandemic that "we simply have no reasonable basis to conclude the same parties will be involved in a future controversy if a similar situation ever does arise again"). Therefore, this exception does not save the case from being moot.

### E. Discovery or Evidentiary Hearing

Finally, Plaintiffs argue that the Court should hold an evidentiary hearing or allow a period of jurisdictional discovery before accepting Defendants' factual attack on the Court's jurisdiction. Plaintiffs' Brief at 13–14. Plaintiffs assert that the Court should treat Defendants' Brief as a motion for summary judgment because Defendants' mootness arguments are intertwined with the merits of Plaintiffs' claims. Id. at 14.

As an initial matter, the Court finds that the jurisdictional issue and the merits inquiry are not intertwined. The question raised by the merits is whether the Vaccine Mandate along with an alleged policy of denying all RARs violated various laws. The jurisdictional question is whether the Vaccine Mandate and accompanying RAR policy still exist such that the Court can

enjoin them or declare them to be unlawful.  Those are separate issues.  <u>See</u>
<u>Thomas v. Branch Banking & Tr. Co.</u>, 32 F. Supp. 3d 1266, 1269 n.2 (N.D. Ga.
2014); <u>see also</u> <u>Gardner v. Mutz</u>, 962 F.3d 1329, 1339–40 (11th Cir. 2020)
(discussing the limited types of cases in which the jurisdictional and merits
issues are intertwined).  Therefore, the Court need not treat the jurisdictional
inquiry as a motion for summary judgment.  Because the mootness inquiry
depends on facts outside the Complaint, the Court may weigh evidence and
decide facts to determine whether it has jurisdiction.  <u>See</u> <u>Carmichael</u>, 572 F.3d
at 1279.

Under the circumstances of this case, the Court finds no reason to hold
an evidentiary hearing or to permit discovery.  The former Fifth Circuit has
held that, when Defendants challenge jurisdiction based on disputed factual
matters, the Court "must give the plaintiff an opportunity for discovery and for
a hearing that is appropriate to the nature of the motion to dismiss."
<u>Williamson v. Tucker</u>, 645 F.2d 404, 414 (5th Cir. May 1981).[7]  Specifically, "the
plaintiff should have an opportunity to develop and argue the facts in a manner
that is adequate in the context of the disputed issues and evidence."  <u>Id.</u>

---

[7]  In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the
Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit
handed down prior to the close of business on September 30, 1981.

Here, Plaintiffs have had an appropriate opportunity to be heard. On January 25, 2023, the Court provided notice that it was considering whether the case is moot based on facts outside the Complaint. See Order of Jan. 25, 2023. Plaintiffs had nearly three months to respond to the Court's Order with a legal memorandum and any supporting evidence that they wished for the Court to consider. Plaintiffs submitted their briefing and some evidence. See Plaintiffs' Brief; House Testimony. Plaintiffs have not identified any live testimony or other additional evidence that would assist the Court. This is not a case "where the facts are complicated and testimony would be helpful." Williamson, 645 F.2d at 414. Thus, the Court will decide this issue based on the written submissions of the parties. See Rule 43(c); see also Kennedy v. Floridian Hotel, Inc., 998 F.3d 1221, 1232–33 (11th Cir. 2021) ("Although the court may consider both oral and written evidence in the record, an evidentiary hearing is not required.").

Finally, the Court will not defer ruling so that the parties may engage in jurisdictional discovery. No discovery has occurred in this case because the Court granted Defendants' unopposed motion for an extension of time for the parties to conduct their case management conference and to file a case management report.[8] See Endorsed Order (Doc. 46), filed May 2, 2022. In the

---

[8] In the motion, Defendants proposed "that the parties confer and file a joint case management report . . . within 21 days of the Court's decision on Defendants' forthcoming

almost six months since the Court questioned whether the case is moot, Plaintiffs have not sought to open jurisdictional discovery.  Plaintiffs' failure to diligently seek discovery undermines their argument that discovery is necessary.  See United Techs. Corp. v. Mazer, 556 F.3d 1260, 1280–81 (11th Cir. 2009) ("UTC never formally moved the district court for jurisdictional discovery but, instead, buried such requests in its briefs as a proposed alternative to dismissing APM on the state of the current record.").  Moreover, the Court will not open discovery because Plaintiffs have not identified what information they need or what relevant information they expect to be discovered.  See Posner v. Essex Ins. Co., 178 F.3d 1209, 1214 n.7 (11th Cir. 1999) (per curiam) ("Plaintiffs failed to specify what they thought could or should be discovered.").  The Court will not open discovery simply to allow Plaintiffs to engage in a fishing expedition based on nothing more than speculation that they may find something relevant to jurisdiction.  See Wolf v. Celebrity Cruises, Inc., 683 F. App'x 786, 792 (11th Cir. 2017) (per curiam) ("Such discovery requests should not serve as fishing expeditions, and, as such, are appropriate only when 'a party demonstrates that it can supplement its jurisdictional allegations through discovery.'" (quoting Trintec Indus., Inc. v. Pedre Promotional Prod.,

---

motion to dismiss."  Defendants' Unopposed Motion for an Extension of Time to Respond to the Complaint and for the Parties to File a Case Management Report (Doc. 45) at 3, filed April 28, 2022.  Defendants represented that "Plaintiffs do not oppose the relief requested in this motion."  Id.

<u>Inc.</u>, 395 F.3d 1275, 1283 (Fed. Cir. 2005))).  Therefore, the Court concludes that an evidentiary hearing and a period of jurisdictional discovery are not warranted.

## IV.   Conclusion

In this lawsuit, Plaintiffs asserted weighty claims against Defendants' policies and asked this Court to grant prospective relief.  Before the Court reached a decision on the merits, Congress and the President intervened and directed Defendants to rescind the challenged policies.  Defendants have now complied with the statutory mandate, and Plaintiffs offer no more than speculation that Defendants will return to their old policies.  Therefore, the case is moot.  Accordingly, it is

**ORDERED:**

1.   The Air Force Plaintiffs' Second Amended Complaint (Doc. 57) is **DISMISSED without prejudice** for lack of subject matter jurisdiction.

2.     The Clerk of the Court is **DIRECTED** to enter judgment dismissing this case without prejudice, terminate any pending motions and deadlines, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, on July 5, 2023.

**MARCIA MORALES HOWARD**
United States District Judge

lc30
Copies to:

Counsel of Record